[No. E043083. Fourth Dist., Div. Two. Nov. 19, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO CRISTOBAL RABANALES, Defendant and Appellant.

## COUNSEL

Kathleen Woods Novoa, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela Ratner Sobeck and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RAMIREZ, P. J.**—Defendant and appellant Mario Cristobal Rabanales appeals his seven-year sentence that was imposed based on his plea of guilty to attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)) pursuant to a plea agreement. He contends the trial court did not follow the plea agreement when it imposed the seven-year sentence. He also argues that the trial court deprived him of his constitutional right to due process and his right to a jury trial when it found him in violation of his plea agreement and sent him to prison because of a domestic violence allegation that was never tried to a jury or proven beyond a reasonable doubt. To support this argument, defendant cites the Supreme Court's decisions in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), and *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*). As a result, he seeks specific performance of the plea agreement. On sufficiency of the evidence grounds, defendant also challenges the trial court's finding that he violated a condition of his own recognizance release while awaiting final sentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a plea bargain, defendant pled no contest to the attempted murder of Joseph B. in violation of sections 664 and 187, subdivision (a), a felony strike offense within the meaning of section 667.5, subdivision (c).[2] The court accepted the plea and found there was a factual basis for the offense based on the evidence in the preliminary hearing transcript. The facts and circumstances of the offense are not relevant to our analysis.

Defendant's sentencing exposure for the attempted murder offense was five, seven, or nine years in state prison, and the court immediately sentenced him to the middle term of seven years. Defendant was then released on his own recognizance subject to various terms and conditions as set forth on his change of plea form and ordered to appear in court at a later date. If he returned thereafter as ordered by the court, the parties agreed defendant would be allowed to withdraw his no contest plea to attempted murder and to enter a new and different plea.

The new and different plea was to assault with a deadly weapon with force likely to produce great bodily injury in violation of section 245, subdivision (a)(1), which the court advised was not a strike offense. Pursuant to the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The record indicates defendant also had one or two prior felony convictions which were not alleged in the charging document.

plea bargain, defendant would then be granted probation with one year in custody and a four-year suspended prison sentence. If, on the other hand, defendant failed to return as ordered, he would serve the original sentence of seven years in state prison. The parties refer to this arrangement as a "*Vargas* waiver," based on the approval of a similar plea agreement in *People v. Vargas* (1990) 223 Cal.App.3d 1107 [273 Cal.Rptr. 48] (*Vargas*).

Among other terms and conditions, the *Vargas* waiver included a "break no laws" provision. By way of a petition filed March 15, 2007, the district attorney sought to revoke defendant's release on the *Vargas* waiver. As proof of a violation of his release, the district attorney submitted a report alleging defendant committed "spousal abuse" in violation of section 273.5. On April 19, 2007, the court held a preliminary hearing in the new spousal abuse case, as well as a *Vargas* waiver hearing in this case to determine whether defendant violated the terms of his release. After hearing testimony from several witnesses, including defendant and the victim, the court found defendant violated the break no laws provision of his *Vargas* waiver, and ordered execution of the seven-year prison term previously imposed. The prosecutor then moved to dismiss the new spousal abuse case; the motion was granted with no objection.

## DISCUSSION

### *Certificate of Probable Cause Requirement*

Defendant claims he preserved his right to a jury trial in the plea agreement for any violations of his *Vargas* waiver. He complains the trial court did not follow the plea agreement and instead held a hearing without a jury and found he violated his *Vargas* waiver. Citing *People v. Mancheno* (1982) 32 Cal.3d 855, 859–860 [187 Cal.Rptr. 441, 654 P.2d 211], he also contends the trial court violated his constitutional right to due process because it did not follow the plea agreement.

The People contend defendant's claims are not reviewable on appeal because they attack the validity of the plea and defendant did not comply with section 1237.5 by obtaining a certificate of probable cause. Defendant concedes he did not obtain a certificate of probable cause but argues one was not required because he seeks to enforce the plea agreement, not invalidate or withdraw from it. In this regard, he believes his case is distinguishable from our recent decision in *People v. Carr* (2006) 143 Cal.App.4th 786 [49 Cal.Rptr.3d 548] (*Carr*). In *Carr*, we concluded the defendant was required to obtain a certificate of probable cause to raise several arguments related to the

scope of the trial court's discretion and the validity of the sentence imposed pursuant to the terms of his *Vargas* waiver, because he was, in effect, challenging the very sentence he negotiated as part of the plea bargain. (*Id.* at pp. 793–794.) Defendant contends *Carr* is distinguishable because the plea agreement in that case showed the defendant waived his right to a jury trial on any alleged violations of his *Vargas* waiver and was not seeking to enforce an integral part of the plea bargain. By contrast, defendant believes his agreement shows he expressly declined to waive his right to a jury trial on any alleged violations of his release on the *Vargas* waiver and did not agree to have any alleged violations tried by the court under the preponderance of evidence standard. He therefore seeks to enforce an integral part of his plea bargain.

█ Under section 1237.5, a defendant must obtain a certificate of probable cause to appeal from a judgment entered on a guilty plea unless the appeal falls within an exception. In this regard, a defendant need not comply with section 1237.5 if the appeal is based on "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(B).) Under this exception, compliance with section 1237.5 is not required if the defendant asserts "issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed." (*People v. Panizzon* (1996) 13 Cal.4th 68, 74 [51 Cal.Rptr.2d 851, 913 P.2d 1061].)

This exception has been interpreted to include claims involving alleged violations of the plea agreement. In *People v. Kaanehe* (1977) 19 Cal.3d 1 [136 Cal.Rptr. 409, 559 P.2d 1028], for example, the prosecutor agreed in exchange for the defendant's guilty plea to relinquish his right to make a sentencing recommendation at the time of sentencing. On appeal, the defendant claimed the prosecutor breached the plea agreement when he mailed a letter to the court arguing the defendant should not be granted probation. (*Id.* at p. 7.) The defendant also argued the trial court erred when it then refused to allow him to withdraw his guilty plea. (*Id.* at p. 6.) Our Supreme Court concluded compliance with section 1237.5 was not required because "the alleged breach of the plea bargain by the prosecutor occurred after entry of the plea and because it pertains only to sentencing." (*Kaanehe*, at p. 8.)

In *People v. Brown* (2007) 147 Cal.App.4th 1213 [54 Cal.Rptr.3d 887], the defendant argued on appeal that the trial court violated the terms of her plea agreement when it ordered her to pay more than $34,000 in victim restitution. She sought specific performance of the plea agreement on the ground that it strictly limited the amount of victim restitution to the victim's out-of-pocket

expenses of $280. (*Id.* at p. 1217.) The Court of Appeal concluded a certificate of probable cause was not required because the grounds for the defendant's appeal arose "from the trial court's failure to give effect to the terms of her plea" by imposing a punishment more severe than the terms of the parties' agreement. (*Id.* at pp. 1220–1221.)

Likewise, in a case entitled *People v. Vargas* (2007) 148 Cal.App.4th 644 [55 Cal.Rptr.3d 837], the defendant did not obtain a certificate of probable cause, and we addressed and rejected the defendant's argument that the trial court violated and unilaterally modified the terms of his plea agreement. (*Id.* at pp. 651–652.) However, we declined to address the defendant's remaining claims in the absence of a certificate of probable cause, because they attacked the validity of his plea. (*Id.* at p. 652.) These claims included challenges to the specific sentence negotiated as an integral part of the plea agreement and an argument that the sentence violated the prohibition against multiple punishments in section 654. (148 Cal.App.4th at p. 652.)

Based on the foregoing, it is apparent defendant is alleging a breach of the plea agreement by the court, which he contends occurred after entry of the plea and pertains only to a matter involving sentencing. Thus, it is appropriate for us to address defendant's arguments even though he did not obtain a certificate of probable cause.

### *Alleged Violation of* Apprendi, Blakely, *and* Cunningham

Citing *Apprendi, Blakely,* and *Cunningham,* defendant contends he was entitled to a trial by jury and finding of guilt beyond a reasonable doubt on the question of whether he violated the conditions of his release under the *Vargas* waiver. Although he acknowledges the facts at issue here do not directly "come within the ambit" of *Apprendi, Blakely,* and *Cunningham,* he argues they do "by implication." However, he does not explain how or why he believes the facts of his case fall within the holdings of the Supreme Court's decisions in these cases.

In *Cunningham,* the most recent of the referenced decisions, the Supreme Court concluded California's determinate sentencing law (DSL) violates a criminal defendant's right to a jury trial guaranteed by the Sixth and Fourteenth Amendments to the extent it allows trial courts to impose an aggravated upper prison term "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham, supra,* 549 U.S. at p. 275 [127 S.Ct. at p. 860].)

■ In our view, defendant's argument is misplaced. A violation of a *Vargas* waiver is a breach of the agreement. A trial court's determination as to whether there was a breach of the agreement is not the same as making a finding in aggravation or a discretionary sentencing choice as contemplated by *Cunningham* or the other cited Supreme Court cases leading up to *Cunningham*. Defendant agreed the trial court could impose one of two specified sentences subject to his compliance with various conditions of release, so the trial court had no discretion to impose a sentence based on aggravating or mitigating factors. It was limited by the plea agreement to resolve any disputed factual contentions as to whether there was compliance with the conditions of release set forth in the plea agreement. In addition, we have already rejected an argument that the trial court's determination as to whether a defendant violated a *Vargas* waiver is the functional equivalent of deciding whether there are aggravating factors to justify imposing the greater agreed term. (*Carr*, *supra*, 143 Cal.App.4th at pp. 793–794.) Moreover, as discussed more fully *post*, the record shows defendant waived any right he may have had to a jury trial to determine whether he violated the conditions of his release under the *Vargas* waiver.

### *Alleged Violation of Plea Agreement*

Citing the written change of plea form he signed on January 16, 2007, which was also signed and approved by the court and the district attorney, defendant claims he preserved his right to have any alleged violations of his *Vargas* waiver determined by a jury under the reasonable doubt standard. The referenced change of plea form is a three-page standardized document that can be adapted for use in a variety of different cases. The form includes 22 numbered paragraphs. On the right side of each page, next to each numbered paragraph, there is a coordinating numbered box. When the defendant writes his initials in a numbered box, he indicates his agreement with the coordinating paragraph. When a box is crossed out, it "means that the information next to that box does not apply" to the defendant. Defendant claims he preserved his right to a jury trial on any alleged violations of his *Vargas* waiver by crossing out and not initialing paragraph 16g on page 3 of the change of plea form.

■ "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in

the sense in which the promisor believed, at the time of making it, that the promisee understood it." [Citations.]' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]' [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767 [37 Cal.Rptr.3d 354, 125 P.3d 290].)

■ As mentioned above, defendant was released on his own recognizance pursuant to a "*Vargas* waiver," which is based on the approval of a similar plea agreement in *Vargas, supra*, 223 Cal.App.3d 1107. The defendant in *Vargas* was released on bail following a guilty plea. As part of a plea bargain, he agreed to a two-tiered sentence—a specified greater term if he failed to appear for sentencing and a specified lower term if he did appear as directed by the court. (*Id.* at pp. 1108–1109.) The defendant failed to appear. When he was later apprehended and brought before the court, his attorney moved to withdraw the plea. The court denied the motion and sentenced the defendant to the greater term as provided in the plea bargain. (*Id.* at p. 1111.) On appeal, the defendant argued the sentence imposed was illegal for failure to comply with section 1192.5. Although section 1192.5 allows a trial court to withdraw its approval of a plea agreement in light of new information in order to impose a more severe sentence, the trial court must first give the defendant an opportunity to withdraw his plea if he so desires. (*Vargas*, at p. 1111.) Since the parties had agreed to the two-tiered sentence, however, the Court of Appeal in *Vargas* concluded the trial court had properly imposed the greater term. The Court of Appeal explained that the trial court had simply implemented the reasonable expectations of the parties when it imposed the greater term without repudiating the plea agreement and without imposing "a sentence more onerous than that which defendant had agreed to accept as part of the bargain itself." (*Id.* at p. 1113.)

As permitted by *Vargas*, paragraph 17 of defendant's change of plea form, which is entitled "*Vargas* waiver," reads as follows: "I understand that I am being sentenced today pursuant to the initial terms stated in paragraph 9. If I comply with the conditions set forth in numbers 16a, 16b, 16c, 16d, 16e, and 16f, and any other terms as ordered, the court will resentence me pursuant to the remainder of the terms described in paragraph 9." Paragraph 9 of the change of plea form states defendant "freely and voluntarily" agrees to plead no contest "[a]s a result of plea bargaining" and/or because the district attorney agreed to the following terms, which were handwritten on the form: "I will plead today to the charged offense ([§§ 664, 187]) on a '*Vargas*'

waiver; if I violate my *Vargas* waiver, I will be sentenced to the midterm of 7 years in state prison. [¶] If I return to court when I am ordered to with no *Vargas* violations, I will be allowed to change my plea to a no contest plea to violation of Penal Code section 245[, subdivision] (a)(1), assault with force likely to produce injury, a non-strike, with a 4 year grant of probation with one year of custody and a 4 year suspended sentence in prison."

■ Paragraph 16 on the change of plea form is entitled *"Cruz* waiver." Since the *Vargas* waiver in paragraph 17 incorporates by reference paragraphs 16a through 16f of the *Cruz* waiver, we must also examine the substance of this paragraph. The *Cruz* waiver in paragraph 16 is based on our Supreme Court's decision in *People v. Cruz* (1988) 44 Cal.3d 1247, 1249 [246 Cal.Rptr. 1, 752 P.2d 439] *(Cruz)*. The defendant in *Cruz* pled guilty pursuant to a plea bargain that provided a lenient sentence, including probation. The defendant was then released on bail but failed to appear for final sentencing. When the defendant was later apprehended and brought to court, the trial court announced it would not follow the plea bargain. Although the defendant then moved to withdraw the plea, the trial court denied the motion and imposed a prison sentence. *(Id.* at p. 1249.) Citing section 1192.5, our Supreme Court concluded the sentencing court was required to impose the sentence provided in the plea agreement or allow the defendant to withdraw the plea. In other words, the trial court could not impose a more severe punishment than that provided in the plea agreement in order to penalize the defendant for his failure to appear. The Supreme Court reasoned that: "The imposition of an additional or enhanced sentence for a separately chargeable offense without the benefit of a trial on that charge, and in the absence of a knowing and intelligent waiver, is clearly offensive to the principles of due process." *(Cruz,* at p. 1253.) However, in a footnote, the Supreme Court noted a trial court could "impose a sentence in excess of the bargained-for term" as a result of a failure to appear if, at the time the trial court accepts the plea, the defendant so agrees and expressly waives the right to withdraw the guilty plea. *(Id.* at p. 1254, fn. 5.)

Thus, in keeping with the Supreme Court's decision in *Cruz*, paragraph 16 of defendant's change of plea form sets forth a *"Cruz* waiver," which reads in pertinent part as follows: "I understand I have an absolute right under California law to withdraw my plea if the court, for any reason, does not follow the plea bargain agreement. *I also understand that I cannot receive any additional penalty or punishment for any subsequent failure to appear or any new offense unless I am properly charged and convicted of such an offense. I understand and agree as part of this plea bargain agreement to be released upon my own recognizance and to waive these rights, and as a condition of my release, I will*: [¶] . . . [¶] c. Appear in court for sentencing,

or any other date set by the court. [¶] d. *Not violate any law (excluding infractions) between today and the date of sentencing.*" (Italics added.) As defendant contends, his change of plea form shows he initialed all of the boxes next to paragraph 16 and each of the subparagraphs, 16a through 16f, which list the specific terms defendant agreed to follow while released.

Next to paragraph 16g, however, defendant placed an "x." Paragraph 16g reads as follows: "g. If I violate any of the above conditions in paragraph 16a–16f, I then agree the court will no longer be bound by this plea bargain and I would not have any right to withdraw my plea. *I further understand and agree that any willful violation of these terms will be decided by the sentencing judge without a jury and by a preponderance of the evidence.* I further understand and agree, that if the court finds any willful violation of these terms, the court will be free to impose any greater sentence than expressly stated in this agreement, up to the maximum penalty for each offense and enhancement to which I am pleading guilty/no contest or admitting, and I will not have any right to withdraw my plea." (Italics added.)

By placing an "x" next to paragraph 16g, defendant contends he was guaranteed that the longer sentence of seven years in prison could be imposed against him in this case only if a jury convicted him of a new criminal offense in a separate case. In other words, he seems to believe the "x" next to paragraph 16g somehow granted him the right to be tried and convicted by a jury of a new criminal offense in a separate case before the trial court in this case could find him in violation of his *Vargas* waiver and impose the greater term of seven years in prison. He argues that if he initialed this paragraph it would mean he waived his right to a jury trial and his right to proof of any alleged violation beyond a reasonable doubt, so by placing an "x" next to paragraph 16g "the converse must also be true." In our view, defendant is asking us to read a term into the agreement that just is not there.

█ "Where the parties have reduced their agreement to writing, their mutual intention is to be determined, whenever possible, from the language of the writing alone. [Citations.] We may not 'create for the parties a contract which they did not make, and . . . cannot insert in the contract language which one of the parties now wishes were there.' [Citation.] [¶] . . . [¶] A contract term will be implied only where the term is 'indispensable to effectuate the expressed intention of the parties.' [Citation.] A term can only be implied '. . . upon grounds of obvious necessity.' [Citations.]" (*Ben-Zvi v. Edmar Co.* (1995) 40 Cal.App.4th 468, 473 [47 Cal.Rptr.2d 12].)

Here, the plea agreement contains no express term guaranteeing defendant a right to be tried and convicted by a jury of a new criminal offense in a separate case before the trial court in this case could find him in violation of

his *Vargas* waiver and impose the greater term of seven years in prison. Nor can we conclude any term conferring such a right was implied when defendant placed an "x" next to paragraph 16g. As noted *ante*, when defendant placed an "x" next to a paragraph in the plea agreement, it was to indicate the terms in that paragraph did not apply to defendant's case. The relevant portion of paragraph 16g states: "any willful violation of these terms will be decided by the sentencing judge without a jury and by a preponderance of the evidence." Even if we assume for purposes of analysis that this provision does not apply to defendant's case because he placed an "x" next to it, we would be unable to construe the plea agreement in the manner suggested by defendant. This is because defendant did place his initials next to the first part of paragraph 16, which essentially waives the right to a jury trial on any alleged violations of the conditions of release set forth in paragraphs 16a through 16f. In this regard, paragraph 16 states: "I also understand that I cannot receive any additional penalty or punishment for any subsequent failure to appear or any new offense unless I am properly charged and convicted of such an offense. I understand and agree as part of this plea bargain agreement to be released upon my own recognizance and *to waive these rights* . . . ." (Italics added.) In other words, by initialing the beginning of paragraph 16 and then placing an "x" next to paragraph 16g, defendant did not indicate a clear intent to preserve his right to a jury trial on any alleged violations of the conditions of his release. Instead, he created an irreconcilable conflict that renders the agreement ambiguous as to his intent on this issue.

To resolve this ambiguity, "we consider the circumstances under which this term of the plea agreement was made, and the matter to which it relates (Civ. Code, § 1647) to determine the sense in which the prosecutor and the trial court (the promisors) believed, at the time of making it, that defendant (the promisee) understood it (*id.*, § 1649)." (*People v. Shelton, supra,* 37 Cal.4th at pp. 767–768.) The record indicates the parties entered into the plea agreement on January 16, 2007, which was the first day of defendant's trial on the original attempted murder charge. When the court asked whether the parties were ready to bring the jury in, defense counsel asked to make a record of a recent offer by the prosecutor. Defense counsel indicated he recommended defendant accept the offer, but defendant had decided to reject it. Under the terms of the offer, defendant would plead to a felony strike offense in exchange for probation with one year in county jail. If he violated his probation, he would then be sentenced to no more than four years in prison. Defendant indicated he rejected the offer and was willing to go to trial because he was concerned about having a strike offense on his record.

During jury panel selection, there was a recess and the parties reached an agreement, the terms of which were then placed on the record. Defense counsel stated he did not join in the waivers or the plea, and defendant

confirmed he was entering into the agreement against his attorney's advice stating, "Yeah, I'm doing it because I want to get out." In closing, the court said, "Don't violate the terms of your Vargas waiver. I'll have no choice but to sentence you to seven years. [¶] Good luck." Defendant responded, "The only reason I did it is because I have a baby. That's the only reason."

Based on the record before us, it is highly likely the "x" was placed next to paragraph 16g inadvertently as an oversight that was not detected by counsel or the court rather than as a deliberate act by mutual consent to preserve defendant's right to a jury trial on any alleged violations of the conditions of his release. We reach this conclusion for several reasons. First, the differences between the prior offer and the final agreement, as well as the comments made on the record, show what served as the most important motivating factors for entering into the plea agreement. Although the parties placed the terms of the plea bargain on the record and the court confirmed defendant intended to waive his right to a jury trial on the attempted murder charge, the parties did not discuss whether defendant was also waiving this right for purposes of the *Cruz* and/or the *Vargas* waivers. There is nothing to suggest the parties had any reason to deviate from the standard waivers in paragraphs 16 and 17 on the change of plea form. If there had been some intent to deviate from the standard waivers, we would expect to see some mention of this on the record. Second, without some alteration or rejection of the waivers set forth at the beginning of paragraph 16, placing an "x" next to paragraph 16g was not a clear statement of defendant's purported intent to preserve his right to a jury trial on any alleged violations of the conditions of his release. In other words, if this had been his true intent, he would have had a strong incentive to make this intent clear, so we would expect to also see some alteration or rejection of the initial waivers in paragraph 16.

In addition, it is reasonable to infer the prosecutor would not have extended an offer which provided for a two-tiered sentence similar to that approved in *Vargas* if it did not include the standard waivers listed in paragraphs 16 and 17 on the change of plea form. These standard waivers, particularly the waiver of the right to a jury trial on any alleged violations of the conditions of release, would have been significant to the prosecution. Having already prepared and appeared for trial on the attempted murder charge, the prosecution would have had a strong desire to avoid the time and expense of another jury trial and to be able to resolve any alleged violations of the conditions of release before the court, without a jury, under a preponderance of the evidence standard.

Most tellingly, the parties' subsequent conduct is inconsistent with the existence of a waiver of the right to a jury trial on any alleged violations of the conditions of release. In this regard, defendant appeared before the court

on March 20, 2007, because he had been arraigned on the new spousal abuse charge. The same attorney who represented defendant in connection with the attempted murder charge was appointed to represent him in the new case. The attorney stated, "We've had some discussions in chambers relative to the *Vargas* waiver that was given in [the attempted murder case]. [¶] [Defendant] would like to have a hearing on that rather than simply accepting the seven-year commitment." Counsel agreed for the hearing on the "*Cruz-Vargas* waiver" to be scheduled for the same time as the preliminary hearing in the new case and made no request or demand for a jury trial to determine whether defendant violated the conditions of his release.

When defendant and his counsel next appeared before the court for the combined hearing, defense counsel stated as follows: "If we're doing a preliminary hearing on [the new case] as well as . . . a *Vargas* violation hearing on the old case . . . [¶] . . . [¶] . . . it would be my contention that they should be done in separate hearings. [¶] The reason for that is the Court will have to make its evaluation as to the preliminary hearing and the *Vargas* violation with two separate standards. [¶] I believe that a preponderance of the evidence [standard] is required for the *Vargas* violation, whereas a strong suspicion is required for the preliminary hearing; so based on the fact that the Court will have to apply two different standards—and I'm not suggesting that this Court can't separate in its analysis and opinion . . . but for the record, I would still—I would request that we have two separate hearings and not one combined hearing." The court responded it could separate the two standards and would run the hearings concurrently. After hearing the evidence, the court concluded there was sufficient evidence to believe defendant committed the spousal abuse charge in the new case and ordered defendant held to answer on the complaint. With respect to the "*Cruz-Vargas* allegations," the court stated as follows: "[T]he court finds by a preponderance of the evidence that [defendant] did in fact violate his *Cruz-Vargas* waiver by committing the offenses alleged in [the new spousal abuse case]. [¶] . . . [¶] Based upon that finding, the Court is simply going to let stand the sentence that occurred on January 18th of '07. [¶] [Defendant] will be committed to the state prison for the aggravated [*sic*] term of seven years." Defense counsel then made no objection when the court granted the prosecutor's motion to dismiss the spousal abuse case without a jury trial.

█ In sum, all of the parties acted at all times as if defendant had initialed paragraph 16g on the change of plea form agreeing "that any willful violation of [the conditions of defendant's release] will be decided by the sentencing judge without a jury and by a preponderance of the evidence." Under these circumstances, we cannot conclude the parties had any intent whatsoever not to have made paragraph 16g an integral part of their agreement. We must therefore reject defendant's contention the trial court did

not follow the plea agreement when it determined he violated his *Vargas* waiver without a trial by jury based on a preponderance of the evidence standard of proof.

### *Sufficiency of the Evidence*

Alternatively, defendant argues there is insufficient evidence to establish he violated the terms of his *Vargas* waiver by committing spousal abuse. Although he contends the offense should have been proved beyond a reasonable doubt, he argues there is insufficient evidence even under the lower preponderance of the evidence standard applied by the court. Essentially, defendant's contention is there was insufficient evidence because he testified he did not strike the victim and because the victim's testimony was weak and not credible.

Based on our previous discussion, it was appropriate for the trial court to apply the preponderance of evidence standard to determine whether defendant violated the break no laws condition of his release. The question whether defendant violated the conditions of his release is one of fact, which we review under the substantial evidence test. "When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination . . . ." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874 [197 Cal.Rptr. 925].) "Deferential review is particularly necessary when, as here, the factual determination depends in part on judging a witness's credibility," and we must uphold such a determination if it is supported by substantial evidence. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1040 [90 Cal.Rptr.2d 607, 988 P.2d 531].) "We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469 [23 Cal.Rptr.3d 871].)

The People claimed defendant violated his "*Cruz/Vargas* release" by violating section 273.5, which states in pertinent part as follows: "(a) Any person who willfully inflicts upon a person who is . . . the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony . . . . [¶] . . . [¶] (c) As used in this section, 'traumatic condition' means a condition of the body, . . . whether of a minor or serious nature, caused by a physical force."

■ "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction.

[Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].) The victim testified during a hearing on April 19, 2007, that defendant was the father of her two children. She further testified defendant had been drinking and they got into an argument on or about March 10, 2007. Defendant then hit her a couple of times on the face and ribs while she was lying on her back in bed. As a result, she had a black eye and injured ribs. She also recalled having some marks on her arms but was not sure she sustained these injuries during the incident with defendant.

The injuries to the victim were corroborated by the testimony of two other witnesses. First, in response to questioning by defense counsel, a police detective testified he contacted the victim by telephone on March 13, 2007, and then talked with her again in person on the same day. During the in-person meeting, the detective said he noticed the victim had a black eye and some bruising on the top and bottom of both of her forearms. Later, to rebut defendant's testimony the victim had no injuries, the People called the victim's aunt to the stand. The aunt testified she saw the victim shortly after the incident and noticed she had a black eye and bruises and cuts on her arms.

As defendant contends, there is contrary evidence in the record. For example, the victim was reluctant to talk to the police detective. When the detective asked her to tell him what happened, she asked if she could wait until the next day because she wanted to think about it. She also told the detective her injuries were not caused by defendant. In addition, defendant testified in his own defense. He admitted he had been drinking heavily during the time in question. He also admitted he and the victim had gotten into an argument, but he denied hitting her. He claimed the victim was mad at him so she lied. He also denied the victim had a black eye or any other injuries.

■ In sum, defendant has not shown an absence of evidence to support the trial court's finding he committed spousal abuse. Rather, defendant merely cites conflicts in the evidence that made it possible, although improbable, for the court to interpret the evidence in his favor. Under the relevant standard of review, circumstantial evidence is not insufficient simply because it is " ' "susceptible of two interpretations, one of which suggests guilt and the other innocence." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66 [132 Cal.Rptr.2d 271, 65 P.3d 749].) We therefore conclude there is sufficient evidence defendant violated the break no laws condition of his release by committing spousal abuse. As a result, we also conclude the trial court fulfilled the reasonable expectations of the parties when it ordered execution of the seven-year prison term as provided in the plea agreement.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 2009, S169402. George, C. J., did not participate therein.