Filed 7/12/16  P. v. Horton CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B264443 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA065122) |
| v. | |
| MONTINEZ J. HORTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed and remanded with directions.

Pamela J. Voich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The trial court sentenced appellant Montinez Horton to a five-year upper term in state prison upon a conviction by plea for corporal injury to a cohabitant or co-parent of a child, with a prior domestic violence conviction. (Pen. Code, § 273.5, subd. (f)(2).)[1] The court imposed sentence after finding that Horton violated the terms of a *Cruz* waiver.[2] On appeal, Horton contends the evidence was insufficient to support the court's finding that he willfully violated the *Cruz* waiver. We reverse and remand with directions for further proceedings consistent with this opinion.

## FACTS

Horton stayed off and on with Tiffany M. while visiting their preschool-aged son. On January 13, 2015, Horton dragged Tiffany across the floor by her hair, hit her in the head several times and strangled her until she nearly lost consciousness. Horton had been convicted of a domestic violence battery (§ 243) within seven years of the attack on Tiffany. The couple's son was in the family home during the attack. Tiffany ran outside after the attack and called the Sheriff's Department. Deputies responded to the scene and forced entry through the front door. They found Horton hiding under a bed with the couple's son. While Horton was in the rear seat of the patrol car, he kicked out a window in the car.

In January 2015, the People filed a felony complaint charging Horton with corporal injury of a cohabitant or child's parent after a prior conviction for domestic violence (count 1; § 273.5, subd. (f)(2)); vandalism over $400 damage (count 2; § 594, subd. (a)); and misdemeanor child cruelty (count 3; § 273a, subd. (b)).

---

[1]    All further undesignated section references are to the Penal Code unless otherwise stated.

[2]    In *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), the Supreme Court ruled that a defendant does not forfeit the protections of Penal Code section 1192.5 governing plea agreements by failing to appear for sentencing under a plea bargain, and must be allowed to withdraw his or her plea should the trial court refuse to adhere to the agreed sentencing terms. (*Cruz, supra,* at p. 1250.) Under a so-called *Cruz* waiver, a defendant may waive his or her right to withdraw a plea, and may agree to a specified sentence as a sanction for engaging in certain behavior as long as the waiver is part of the plea bargain itself. (*Id.* at p. 1254, fn. 5; *People v. Masloski* (2001) 25 Cal.4th 1212, 1221-1222.)

On January 28, 2015, Horton and the prosecutor entered a negotiated plea agreement. Horton waived his constitutional rights before Judge Shannon Knight, and pleaded no contest to felony cohabitant abuse with a prior domestic violence conviction as charged in count 1 in exchange for probation for five years, with all other charges dismissed. During the hearing approving the plea agreement, the trial court advised Horton: "Mr. Horton, you got to come back for sentencing. You're ordered to return to Department A17, . . . , which is on the fourth floor of this building for sentencing on February 18 of 2015. [¶] Now, sir, if you fail to appear for that date or if you violate any of the terms of the agreement that [the prosecutor] stated earlier, then if it's proven that you violated any of the terms, then, sir, the agreement is that you would be sentenced to the high term in state prison of five years rather than the terms that you've agreed to. Do you understand that." Horton answered, "Yeah." Judge Knight then asked Horton if he agreed these terms, and he replied, "Yes." Judge Knight next stated: "Then, sir, you're ordered to return February 18, 2015, at 8:30 a.m., to Department A17 in this building."

Horton did not appear in Department A17 at 8:30 a.m. on February 18, 2015, and the trial court, Hon. Daviann Mitchell, issued a bench warrant. Horton appeared in Judge Mitchell's courtroom at about 4:10 p.m. Judge Mitchell recalled the warrant, but remanded Horton into custody.

On May 22, 2015, at an early morning session, Judge Mitchell conducted a *Cruz* waiver violation hearing. Horton's public defender explained that Horton had called the defender's office at 8:55 a.m. on February 18, 2015, and represented that he was in a hospital emergency room. Judge Mitchell noted that Horton had been given a number of opportunities to verify his hospital stay, but had failed to do so. Further, Judge Mitchell stated that, had Horton presented medical proof, she would have found he had a "legitimate excuse" for failing to appear at 8:30 a.m. In the end, however, Judge Mitchell found that Horton had violated the terms of his *Cruz* waiver. In pronouncing this finding, Judge Mitchell cited Horton's behavior, including his statement in court that he had not known that he was required to appear at 8:30 a.m. on February 18, 2015, a statement which the court found was not true. Judge Mitchell also noted the nature of his crime, his

3

failure to follow court orders, and his failure to provide proof of a legitimate excuse for failing to appear on time.

The trial court agreed to Horton's request that he be sworn as a witness, and be given an opportunity to explain his actions on February 18, 2015. On direct examination by his counsel, Horton testified that he had gone to the Antelope Valley Hospital emergency room at about 6:00 a.m., on February 18, 2015, "trying to get a problem . . . with [his] rectal checked out." Further, that he had called the public defender's office to let them know that he was going to be late to court. On examination by the court, Horton testified that he left the hospital without getting treated. Further, that he had received "one piece of paper" showing that he had been at the hospital, but he did not have it with him because he "didn't know [he] would need that paperwork." At the conclusion of the hearing, the court found Horton "untruthful and . . . lacking complete credibility," and found "there was a violation of his *Cruz* waiver" and that he had "failed to appear [on time] without a legal excuse."

The trial court sentenced Horton to the upper term of five years on the cohabitant abuse count. The remaining counts were dismissed, and Horton was ordered to pay $63.08 in restitution for the damage to the sheriff's patrol car window that he kicked out. The court awarded Horton 188 days of presentence credits, consisting of 94 days of actual custody credit and 94 days of good time/work time credit.

Horton filed a timely notice of appeal.

## DISCUSSION

### I.     The Violation Finding

Horton contends the evidence was insufficient to support the trial court's finding that he willfully violated the terms of his *Cruz* waiver and that he should be resentenced "as provided in the negotiated disposition" so he is granted probation for a term of five years. We agree.

To determine whether Horton violated the terms of his *Cruz* waiver, we must determine what those terms were. Resolution of this issue turns on contract interpretation principles in that a negotiated plea agreement is a form of contract. (*People v. Shelton*

4

(2006) 37 Cal.4th 759, 767.)  The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties.  (*Ibid*., citing Civ. Code, § 1636.)  Such mutual intention is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.  (*People v. Shelton*, *supra*, 37 Cal.4th at p. 767.)

Here, there was no term in the plea agreement that Horton would appear at 8:30 a.m. on February 18, 2015; only that he would appear on February 18, 2015, which he did.  The record shows that during the plea colloquy between Judge Knight and Horton on January 28, 2105, Judge Knight explained to Horton, and he agreed, that he was required to appear on February 18, 2015 for sentencing.  Further, that if he failed to appear, then he would be subject to a five-year sentence in state prison.  It was after the *agreement to these terms* that Judge Knight *ordered* Horton to appear on February 18, 2015, at 8:30 a.m.  There was no further agreement elicited from Horton on the 8:30 a.m. time, and he did not give his agreement to the 8:30 a.m. time.  Thus, what the records shows is a *Cruz* waiver *with an agreed term* that Horton would appear in court on February 18, 2015 for sentencing, followed by a court *order* directing Horton to appear at 8:30 a.m. on February 18, 2015.

We now turn to whether the evidence shows a violation of the terms of Horton's *Cruz* waiver.  To establish a *Cruz* waiver violation, the evidence must establish that the defendant willfully engaged in a prohibited behavior.  (*Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5.)  "The question whether defendant violated the conditions of his [or her] release is one of fact, which we review under the substantial evidence test."  (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.)

Horton argues he presented "uncontradicted evidence" showing that he had gone to a hospital emergency room on February 18, 2015, and on the same day, he had called the local public defender's office to report that he was at the hospital and would be delayed in getting to court.  Horton argues Judge Mitchell "ignored" this uncontradicted

5

evidence.  Further, he argues that, even given Judge Mitchell's determination that his explanation "lacked credibility," his "outward behavior" established that he did not willfully violate his *Cruz* waiver.  Horton further argues that his public defender confirmed that Horton had called the local public defender's office to report he was at the hospital and would be delayed in getting to court.  And, of course, it is not disputed that he did appear in court on the day he was ordered to appear.  Horton asserts that "[t]his is not the behavior of someone who was willfully violating any terms of his *Cruz* waiver."

We reject all of Horton's arguments to the extent that they rely wholly or in part on a foundation that he went to a hospital emergency room on the morning of February 18, 2015.  Judge Mitchell found that Horton's evidence on this point lacked credibility, and we may not and will not review this credibility assessment.  Plainly, the record discloses a good basis for Judge Mitchell's credibility assessment.

However, Horton also argues it was not unreasonable for him to understand that he would be in compliance with his *Cruz* waiver in the event he got to court on February 18, 2015, at any time.  We agree.  Here, Horton notes that Judge Knight, at the plea hearing on January 28, 2015, told Horton that he had to appear in court February 18, 2015, and that if he did not, he would be sentenced to five years in state prison.  To this term, Horton agreed.  Further, Horton correctly notes that the specific time was not announced until after this agreement, and that no one advised him, and he did not agree, that if he appeared at any time later than 8:30 a.m. on February 18, 2015, then he would be in violation of his *Cruz* waiver.  In other words, the record before us shows that Horton *violated a court order* to appear at a specific time on February 18, 2015, but *not that he violated the terms* of his *Cruz* waiver as laid out in court.  We agree with Horton that the evidence of his conduct on February 18, 2015, when considered in light of the terms of his *Cruz* waiver, does not support a finding that he willfully violated its terms.  Horton indisputably violated a court order, and could be subject to any proper sanction for that violation, but the violation of the court order does not justify reneging on the terms of his negotiated plea agreement based on a claimed violation of the terms of his *Cruz* waiver.

6

The court order and the terms of the *Cruz* waiver are two different subjects. When a trial court wants to hold a defendant precisely accountable to appear at a specified time on a specified date under a *Cruz* waiver, the court should precisely assure that the time is included in the terms of the *Cruz* waiver.

## II. Custody Credits

Horton contends he was entitled to 97 days of actual custody credit time, rather than the 94 days calculated by Judge Mitchell, and that he was entitled to 96 days of good time/work time credit, rather than the 94 days calculated by Judge Mitchell, and that the abstract of judgment should be corrected accordingly. The People agree with Horton's credit measures. Because we agree with Horton that his case should be remanded to the trial court with directions to vacate its *Cruz* waiver violation finding, we note this for the trial court to calculate when Horton is resentenced.

## DISPOSITION

The judgment is reversed, and the case is remanded with directions for further proceedings consistent with this opinion.

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.

7