Filed 6/7/22  P. v. Mercado CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JERICHO PARRISH MERCADO,<br><br>        Defendant and Appellant. | A162629<br><br>(Contra Costa County<br>Super. Ct. No. CRF20-9186) |

Pursuant to a plea agreement, defendant Jericho Parrish Mercado pled guilty to one count of first degree burglary in return for a stipulated two-year sentence. As part of the plea, defendant agreed to a so-called *Cruz*[1] waiver, pursuant to which he was released from custody in return for his promise, among other things, to return for sentencing or face a maximum term sentence which in this case would be six years. After defendant twice failed to appear at sentencing, the court found defendant in violation of the waiver and sentenced him to the maximum term. On appeal, defendant contends there is no substantial evidence that he willfully violated the terms of his *Cruz* waiver. We agree and shall reverse.

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5 (*Cruz*).

## Background

On April 27, 2020, around 6:45 a.m., defendant's mother called the police asking for help because defendant, her son, had broken into her home. She reported that defendant was yelling and breaking things inside her home. When defendant was detained and searched, the police officers found multiple knives and a throwing star or shuriken. Based on these events, defendant was charged with one count of first degree burglary (Pen. Code,[2] § 460, subd. (a)) and one count of possession of a shuriken (§ 22410).

In June 2020, defendant was found incompetent to stand trial and proceedings were suspended until his competence was restored in January 2021.

On February 24, 2021, defendant pled guilty to first degree burglary. In exchange for his guilty plea, the prosecution dismissed the weapon charge, stipulated to a two-year sentence, and agreed to release defendant until sentencing provided that he enter a *Cruz* waiver stating that he could be sentenced beyond the two-year stipulated term if he did not appear at his sentencing hearing.

On April 5, defendant did not appear for sentencing and the court issued a bench warrant. Defendant was arrested on April 8 on the warrant, then released when he promised in writing to appear in court at 8:30 a.m. on April 15. On April 15, defendant did not appear at the rescheduled sentencing hearing and the trial court issued another bench warrant. Defendant was arrested on April 20 and remained in custody until the May 3 sentencing hearing.

At the May 3 hearing, the prosecutor told the court that after the sentencing hearing on April 5, the parties received an e-mail from the

---

[2] All statutory references are to the Penal Code, unless otherwise noted.

probation department indicating that defendant had been arrested at 7:50 a.m. that morning for being under the influence of a controlled substance (Health & Saf. Code, § 11550), and that defendant was held in jail until he was sober. He was released sometime after the sentencing hearing was scheduled to commence. The prosecutor further said that defendant's mother reported taking him to court once he was released but the doors to the courthouse were already locked. With respect to the April 15 hearing, defense counsel explained that defendant had left a message on his office phone at 8:26 a.m. the morning of the 15th saying that "he was sick and because he was feeling sick, he didn't feel safe coming to court." Counsel, however, did not receive the message until after the hearing.

Defense counsel argued that defendant had not violated the terms of the *Cruz* waiver because defendant had not willfully failed to appear on either occasion. Counsel argued that while currently competent, defendant's mental health when he was not on his medication likely played a role in his lack of understanding about his court dates.[3] The prosecutor argued that defendant violated the *Cruz* waiver because he had chosen to ingest methamphetamine on April 5, called defense counsel only four minutes before court on April 15, and then never tried to re-calendar the sentencing hearing.

---

[3] Counsel's observation is consistent with the probation officer's opinion based on his March 3 interview that defendant "appeared confused" and "did not appear to understand the ramifications and gravity of his current plea agreement and what the conditions of his release from custody were." Given his mental state, the probation officer expressed concern as to "whether or not [the probation department] can ethically recommend the current plea agreement be upheld, not because it is not in the interest of justice, but because the defendant does not appear to be in a mental state where he functionally understands what he is pleading guilty to and the corresponding consequences associated with it."

The trial court found that defendant "assumed the risk" of being arrested on April 5 when he ingested illegal narcotics. The court further found that defendant willfully failed to appear on April 15, noting that he did not ask defense counsel to place his matter back on the court calendar after calling to report his illness. The court explained that as a result of his violation of the terms and conditions of his *Cruz* waiver, defendant "face[d] anywhere between two, four, and six years in prison as a maximum and all the way to the minimum of probation, although there is a presumption against probation from this type of offense." After weighing the circumstances in aggravation and mitigation, the court imposed the upper term of six years.

Defendant timely filed a notice of appeal.

### Discussion

Section 1192.5 permits a defendant to withdraw a plea if the trial court withdraws its approval of the plea agreement. In *Cruz*, our Supreme Court held that the defendant retains this ability even if the trial court's disapproval of the plea agreement was prompted by the defendant's failure to appear for sentencing. (*Cruz, supra*, 44 Cal.3d at pp. 1253–1254.) Pursuant to a *Cruz* waiver, however, a defendant may expressly waive his or her rights under section 1192.5, and "if the defendant willfully fails to appear for sentencing the trial court may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term." (*Ibid*., at p. 1254, fn. 5; see *People v. Masloski* (2001) 25 Cal.4th 1212, 1222 [" '[W]hen the parties themselves agree as part of the plea bargain to a specific sanction for nonappearance, the court need not permit the defendant to withdraw his or plea but may invoke the bargained-for sanction.' "].)

"The terms 'willful' or 'willfully,' as used in penal statutes, imply 'simply a purpose or willingness to commit the act.' " (*In re Jerry R*. (1994) 29

4

Cal.App.4th 1432, 1438.) "The terms imply that the person knows what he is doing, intends to do what he is doing, and is a free agent. [Citation.] Stated another way, the term 'willful' requires only that the prohibited act occur intentionally." (*Ibid*.) In the context of failing to appear, however, "the failure must be with the specific intent to evade the process of the court." (*People v. Forrester* (1994) 30 Cal.App.4th 1697, 1701.)

Whether defendant willfully violated the conditions of his release is a question of fact reviewed for substantial evidence. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.) We look to the entire record to determine whether there is substantial evidence, either contradicted or uncontradicted, supporting the trial court's findings. (*Ibid*.)

The Attorney General concedes that there is no substantial evidence to support a finding that defendant's failure to appear at the April 5 sentencing hearing was willful. The undisputed facts establish that defendant was in custody at 2:00 p.m. when the hearing was set to commence and, thus, defendant could not appear at the sentencing hearing. (See *People v. Cervantes* (2009) 175 Cal.App.4th 291, 293–295 [failure to appear was not willful because defendant was in the custody of federal immigration authorities at the time of missed hearing].) The trial court's assertion that defendant "assumed the risk" that he might miss his sentencing hearing by using methamphetamine is unfounded. Nothing in the record suggests that defendant was acting with the specific intent to evade sentencing when he ingested methamphetamine more than six hours before the hearing. Indeed, his attempt to return to the locked courthouse immediately upon his release from custody tends strongly to negate such an inference.

With respect to the failure to appear on April 15, the record establishes that at the time of the hearing, the superior court's website instructed

defendants who were experiencing Covid symptoms to "not come to the courthouse" and to contact their attorney "to get a continuance." The undisputed evidence establishes that defendant called his attorney prior to the hearing and reported his illness as required by the court policy. Although defendant did not reference Covid specifically, his comment that he did not feel "safe" going to court because he was sick supports a strong inference that he was reporting Covid symptoms. As defendant notes on appeal, his attorney had a duty to act with promptness and diligence to inform the court of defendant's illness and request a continuance. (ABA, Crim. Justice Standards for the Defense Function (4th ed. 2017) std. 4-1.9.) Contrary to the Attorney General's argument, defense counsel's duty to request a continuance was not excused by the issuance of the bench warrant nor was defendant required to provide evidence of a doctor's visit or a COVID test result or otherwise independently establish that he was sick. In any event, the undisputed evidence that defendant remained home in compliance with the court's Covid instructions negates any suggestion that he was willfully avoiding sentencing, for which there is no other evidentiary support.

The trial court did not find that defendant was untruthful about being sick. That he did not direct his attorney to re-calendar the matter hardly tends to show that he was willfully attempting to evade sentencing, particularly given his impaired mental health. As defense counsel argued in the trial court, "I do believe there was a disconnect in his head between what he was doing and what he needed to do and he thought he took — in his head, in his mind, I'm sure he took care of the 15th, he called and told his attorney I'm sick, I can't be in court."

6

Accordingly, defendant's sentence must be vacated and the matter remanded for resentencing in conformity with his plea agreement.[4]

## Disposition

Defendant's sentence is vacated and the matter is remanded for resentencing in conformity with his plea agreement.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
NADLER, J.[*]

---

[4] Even if the trial court were authorized to disregard the plea agreement, defendant would be entitled to have the court reconsider his sentence in light of recent amendments to section 1170. (See Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)

[*] Judge of the Sonoma County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.