Filed 6/6/25  P. v. Dusharm CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>  v.<br><br>RAINY SKIES JACK DUSHARM,<br><br>       Defendant and Appellant. | C101690<br><br>(Super. Ct. No. CRF23-02019) |

Defendant Rainy Skies Jack Dusharm pleaded no contest to willful infliction of corporal injury on an intimate partner and assault with a deadly weapon.  Defendant's plea agreement contained a *Cruz*[1] waiver that provided that if he completed a six-month residential treatment program, he would be granted probation.  If he did not complete the program, defendant stipulated the trial court would impose a ten-year state prison term.

Program staff removed defendant from the residential treatment program when he had completed only five months based on an interaction he had during a group session, and because he intimidated other members of the program thereafter.  After an evidentiary hearing, the trial court found that defendant violated the *Cruz* waiver and

_____

[1]     *People v. Cruz* (1988) 44 Cal.3d. 1247 (*Cruz*).

1

sentenced him to the stipulated 10 years in state prison.  On appeal, defendant argues that the residential treatment program's intimidation rule was unconstitutionally vague. Further, he argues that there is no substantial evidence that he willfully violated the *Cruz* waiver.  We shall affirm.

## BACKGROUND

The complaint charged defendant with willful infliction of corporal injury on an intimate partner, assault by means of force likely to cause great bodily injury, and assault with a deadly weapon.  (Pen. Code,[2] § 273.5, subd. (a)—count I; § 245, subd. (a)(4)— count II; § 245, subd. (a)(1)—count III.)  The complaint further alleged defendant had a prior strike offense.  (§§ 667, subds. (b)-(j), 1170.12.)

Defendant stipulated to the following factual basis:  "Defendant and the victim, . . . who had been dating for approximately three months, were at their residence.  The Defendant had come home in a state that was described as being 'blackout drunk.'  He started arguing with the victim and throwing items around the house, punching holes in the wall.  He was initially upset because the front door had been left unlocked.  The Defendant started hitting the victim in the face and choking her until she went unconscious.  The victim described seeing white when she was being choked and had blurred vision in her left eye, constituting a traumatic condition.  [¶]  . . . [T]he victim went to the hospital to receive treatment for her injuries.  [¶]  At one point during the incident, the Defendant utilized a cord, and he did that in a way that made the cord a deadly weapon, by wrapping it around her throat and strangling her."

Pursuant to a written plea agreement, defendant pleaded no contest to count I and count III, and admitted he had a prior strike conviction.  As part of the plea agreement, defendant would "be given one opportunity to do a residential treatment program of at least six months," in exchange for pleading to both counts and admitting a prior strike.

---

[2]     Further undesignated statutory references are to the Penal Code.

"If [defendant] successfully complete[d] that, then the strike [would] be stricken, and there's a stipulation that [defendant] would receive an unusual case finding and a promise of felony probation." On this point, the plea agreement stated, "Plea to Ct. 1–[section] 273.5 [,subdivision] (a) and Ct. 3–[section] 245 [,subdivision] (a)(1) plus admit prior strike for 1 opportunity [at] a residential treatment program of at least 6 [months] in duration. If [defendant] completes the program, then at [sentencing], prior strike will be stricken and [defendant] will receive a [unusual circumstances finding] for [no immediate state prison]. If fails to complete program, then stipulates to [upper term] for 10 years." When defendant enrolled in the residential treatment program, the trial court further ordered, "Enter/complete. . . program; obey all program rules."**3**

The trial court held a hearing on whether defendant willfully failed to meet the terms of his *Cruz* waiver. The People submitted the plea agreement, the trial court clerk's minutes, and the discharge letter from the residential treatment program. The discharge letter noted defendant was admitted into the program on August 21, 2023, and stated, "[h]e was discharged from our program on January 23, 2024, due to [m]isconduct."

Defendant called the author of the discharge letter and the residential treatment program counselor, Tajree Wilson, to testify. Wilson testified there was a rule against

---

**3**　　The parties referred to this provision as a *Cruz* waiver after *Cruz, supra,* 44 Cal.3d. 1247. A *Cruz waiver* gives the trial court the power to withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term if the defendant fails to abide by certain conditions. (*Id.* at p. 1254, fn. 5; *People v. Puente* (2008) 165 Cal.App.4th 1143, 1145, fn. 2.) The waiver here is more accurately described as a waiver under *People v. Vargas* (1990) 223 Cal.App.3d at pages 1107, 1113. A *Vargas* waiver allows the parties to negotiate the specific consequences that the trial court may impose if the defendant violates the enumerated conditions. (*Ibid.*; *Puente,* at p. 1146, fn. 3.) For the sake of clarity, we will also continue to use the terminology utilized by the parties in this case of a *Cruz* waiver.

profanity at the program, although he also admitted that some of the program's curriculum included curse words.

While defendant was in the residential treatment program, his grandfather was in the hospital and was likely to pass away. The program provided defendant with emergency passes to visit his grandfather. Defendant heard that peers in the program made critical or negative comments about him receiving these passes.

The residential treatment program has a group called "devotions" in which members of the group read something from a devotions book to set the tone for the day. During one of the group devotion sessions, defendant reportedly said, "Keep my grandfather's name out of your 'f 'n' mouth and don't be a 'B' word." Wilson characterized this language as threatening and stated the "B" word can be perceived as a fighting word in the context of their program, but also stated, "[T]hat wasn't the reason that he got terminated. . . at that exact moment."

Wilson stated defendant's misconduct fell under intimidating others and was not "just based off of the devotions incident." Wilson also stated that after the devotions incident, there were instances where people in the residential treatment program approached Wilson to let Wilson know that defendant had done nothing wrong. The day before his termination, a staff member heard defendant asking another program member, "What did you tell staff?" The staff member perceived defendant to be acting in an intimidating manner to encourage other program members to "back him up."

Defendant confirmed his grandfather was critically ill at the time, and he received an emergency pass the day his grandfather died. Defendant testified he heard gossip that other program members had said he made up excuses to visit his grandfather. He further testified that he was in an emotionally charged state when he used inappropriate language during devotions, but denied threatening anyone. Defendant admitted he was terminated from the residential treatment program for not following their rules.

In defendant's closing argument, defendant argued his discharge was for a minor reason. Defendant further argued he did not utter curse words as a threat and was using the tools provided by the residential treatment program when he expressed his anger during the devotion group session. Defense counsel contended defendant did not do anything that could be considered intimidating. In conclusion, defendant asked the trial court to find that he had substantially complied with the plea agreement and if he did not, he asked for another chance. At no time did defense counsel submit the language of the "intimidation" rule or any other rules of the program to the trial court, nor did counsel argue that the rule was unconstitutionally vague.

The trial court found defendant violated his *Cruz* waiver in that he did not complete the residential treatment program and was discharged from the program on the basis of misconduct. The court found the evidence supported the conclusion defendant was discharged and not eligible for re-admission due to the program's perception that he was engaging in acts of intimidation. As a result, the court imposed the agreed upon sentence of 10 years in state prison.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues the residential treatment program's rule barring intimidation is unconstitutionally vague, and thus the trial court could not find he willfully violated his *Cruz* waiver.[4] This contention is not properly before us.

---

**4** Because we conclude defendant forfeited this argument by not raising it in the trial court, we do not consider the People's challenge that the failure to obtain a certificate of probable cause bars appeal of this issue. Defendant's argument does not challenge the validity of his plea (*People v. Cuevas* (2008) 44 Cal.4th 374, 379), but rather challenges the trial court's finding that he failed to complete the condition for obtaining probation, which is based on a set of facts that occurred both after and separately from his plea. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 499-501 (*Rabanales*).)

5

Defendant forfeited this argument because he did not raise it in the trial court. (*People v. French* (2008) 43 Cal.4th 36, 46.) " The reason for [the forfeiture] rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' [Citation.] " (*Ibid.*)

Defendant could have submitted the residential treatment program's rule barring intimidation for the trial court's review and raised this argument during the *Cruz* violation hearing. He did not. As a result, the trial court was not given an opportunity to pass on its constitutionality. Defendant's failure forfeits this contention on appeal.

Defendant argues the general forfeiture rule should not apply here because this is a pure question of law. Defendant further argues we should exercise our discretion to consider this forfeited argument in the interests of judicial economy. He also argues we should review the rule because the claim involves only a legal question determined from uncontroverted facts. This is not a pure question of law, and we decline to exercise our jurisdiction to decide the issue on this silent record.

When deciding whether a condition imposed in sentencing is unconstitutionally vague, we must determine whether the rule " ' "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.) The necessary precursor to that analysis requires a copy of the rule challenged by defendant to be included in the record so that we may examine it under this test. Noticeably absent from this record is a copy of the rule or the language of the rule defendant challenges. Without the rule for our review, we are not presented with a pure question of law but are left to guess at the terms and scope of the rule. Further, contrary

to defendant's argument that suggests he was discharged solely on the basis of this rule, the facts supporting his dismissal from the residential treatment program also included the language he used during the devotion incident, the language he used in talking to witnesses about what they told staff, and the perceptions of the staff, not just the words defendant used. Thus, the facts also are not uncontroverted.

Defendant next argues there is no substantial evidence that he willfully violated the conditions of his *Cruz* waiver.

The trial court determines whether defendant violated the terms of his *Cruz* waiver under the preponderance of the evidence standard. (*Rabanales, supra,* 168 Cal.App.4th at p. 509.) "The question whether defendant violated the conditions of his release is one of fact, which we review under the substantial evidence test. 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination. . . . ' [Citation.] . . . 'We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*Ibid.*, italics omitted.)

" 'A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.) On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' [Citations.]" [Citation.] "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties

7

negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." ' " (*Rabanales, supra*, 168 Cal.App.4th at pp. 502–503.)

This contract is clear and unambiguous. Defendant had one opportunity to complete a six-month residential treatment program to qualify for probation. He was required to obey all program rules. Defendant did not complete that program. He was terminated from the program because he violated the rules of the program. He did so by both using threatening words and acting in an intimidating manner after the fact in an attempt to mitigate his initial violation. These facts constitute substantial evidence defendant violated the *Cruz* waiver.

DISPOSITION

The judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Hull, Acting P. J.

_____\s\_____,
Boulware Eurie, J.

8