Filed 2/15/23

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>         v.<br><br>WILLIAM FLOYD SALLEE,<br><br>    Defendant and Appellant. | F083728<br><br>(Super. Ct. No. 19CR-05532)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County. Carol K. Ash, Judge.

Allan E. Junker, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Factual Summary and part II. of the Discussion.

# INTRODUCTION

Defendant William Floyd Sallee entered into a plea agreement with the People that specified the punishment to be imposed. He pled no contest to first degree residential burglary and admitted a prior felony "strike" conviction within the meaning of the "Three Strikes" law. He also entered a waiver pursuant to *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), whereby he was permitted to remain free of custody until his sentencing and, if he obeyed all laws and appeared for sentencing, the trial court would impose a sentence of eight years in prison, but if he failed to do so the trial court would impose a sentence of 12 years in prison. Defendant failed to appear for sentencing. After defendant was taken into custody, the trial court sentenced defendant to 12 years in prison. Defendant appealed, arguing the record did not support a finding that his failure to appear was willful. In our prior opinion, we concluded the trial court had not made the required finding and remanded for the trial court to determine whether defendant's failure to appear was willful. (*People v. Sallee* (May 13, 2021, F080805) [nonpub. opn.] (*Sallee*).)

On remand, the trial court held a resentencing hearing, concluded that defendant's failure to appear had been willful, and reimposed the 12-year sentence. Defendant again appeals, contending the sentence must be vacated because the record does not support a finding that his failure to appear was willful. The People disagree.

We ordered the parties to submit supplemental briefing regarding the impact of Senate Bill No. 567's (2021–2022 Reg. Sess.) (Senate Bill No. 567) amendments to Penal Code section 1170, subdivision (b).[1] Defendant contends his sentence must be vacated and his case remanded for resentencing in light of these amendments. The People disagree, arguing the amendments do not apply to this case because defendant entered a plea agreement with a stipulated term of imprisonment.

---

[1] All further undesignated statutory references are to the Penal Code.

In the published portion of our opinion, we hold section 1170, subdivision (b), as amended by Senate Bill No. 567, does not apply when a defendant enters a plea agreement with a stipulated term of imprisonment. In the unpublished portion of our opinion, we hold substantial evidence supports the trial court's finding that defendant's failure to appear was willful.

Accordingly, we affirm.

## PROCEDURAL SUMMARY

On October 1, 2019, the Merced County District Attorney charged defendant with felony residential burglary (§ 459; count 1) and dissuading a witness (§ 136.1, subd. (b)(1); count 2). The complaint further alleged defendant had suffered two prior felony "strike" convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)–(j), 1170.12), which also qualified as prior serious felony convictions (§ 667, subd. (a)(1)), and had served a prior prison term (§ 667.5, former subd. (b)).

On December 9, 2019, the trial court struck the older of defendant's two prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

On the same date, pursuant to an agreement with the People, defendant pled no contest to count 1 and admitted having suffered a prior strike conviction with the understanding he would receive eight years in state prison (the middle term of four years, doubled because of the prior strike conviction) contingent upon his appearance at the sentencing hearing on January 9, 2020. If he failed to appear at that hearing, he would receive a sentence of 12 years (the upper term of six years, doubled because of the prior strike conviction). In exchange for the plea, count 2 and the remaining enhancements would be dismissed. The court accepted the plea.

Defendant did not appear at the January 9, 2020 sentencing hearing.

On January 22, 2020, the trial court sentenced defendant to a term of 12 years (the upper term of six years, doubled because of the prior strike conviction) and imposed various fees and fines.

3.

On May 13, 2021, this court issued an opinion on defendant's prior appeal, vacating the sentence and remanding the matter for the trial court to determine whether defendant's failure to appear for sentencing was willful. (*Sallee*, *supra*, F080805.)

On December 14, 2021, the trial court held a hearing on the willfulness of defendant's failure to appear at the January 9, 2020 sentencing hearing. The trial court concluded that defendant's failure to appear was willful without taking any additional evidence.

On January 3, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY[*, 2]

### January 22, 2020 Sentencing Hearing

"Prior to imposition of sentence on January 22, 2020, defendant's counsel made an offer of proof. He represented that, while defendant was on release after his guilty plea, his 'father was very ill. [His father] had two heart attacks while [defendant] was out on his *Cruz* waiver and was in and out of the hospital, so he was trying to help with his father, who is very ill; as well as his mother, who is elderly and was trying to deal with everything with his father, so that is why he was not able to come to court [for the January 9, 2020 hearing]. [¶] He did call his parole agent shortly after he did miss court and turned himself in.'

"Defendant's mother testified at the sentencing hearing that defendant's 'father did have two heart attacks and was in three different hospitals from January 28th . . . to January 7th—I mean the 8th, and his father is very seriously ill.' She further testified that on the morning of January 9, 2020, defendant 'overslept, and [when] he woke up, he said, "I've got to call my parole officer[.]" [However,] she was out sick with bronchitis for three days . . . .'

"The trial court did not explicitly find that defendant's failure to appear at the January 9, 2020 hearing was willful. It concluded that defendant 'had entered a plea and was supposed to come back on January

---

[*] See footnote, *ante*, page 1.

[2] Because defendant raises only sentencing issues, the facts underlying the offenses are not relevant and are omitted from this opinion.

9th, and he didn't come back.'  It further stated that it had 'ma[d]e it clear [to defendant that] when you do a *Cruz* waiver that you need to come back.'  The trial court then imposed a 12-year term of imprisonment." (*Sallee*, *supra*, F080805.)

The trial court did not discuss any aggravating or mitigating circumstances before imposing the sentence.

After the trial court imposed the sentence, the following exchange occurred in the context of calculating custody credits:

"[DEFENDANT'S COUNSEL]:  I believe he got picked up by his parole agent on January 10th.  I don't know if he's been in our jail since January 10th.  I think he may have actually been picked up in Stanislaus County.

"THE DEFENDANT:  I went to Stanislaus County.  Remember, I mentioned that I might have that warrant?

"THE COURT:  I don't recall it now, but I'm not doubting what you're saying.

"THE DEFENDANT:  While I was out on the *Cruz* waiver, they picked me up.  I spent a week in jail until they got – took care of the paperwork on the warrant."

"THE COURT:  Okay.  Well, that would be a separate case than this.  Our jail shows you came into custody here on [January] 15[, 2020] . . . ."  (Italics added.)

**Proceedings on Remand**

On October 15, 2021, defendant filed a document entitled "motion for modification of sentence."  (Capitalization & boldface omitted.)  The People filed an opposition to that motion, attached to which was a document reflecting that defendant was arrested on January 10, 2020, at 10:10 a.m., and released from custody on January 15, 2020.  On December 14, 2021, defendant elected to withdraw the motion and submitted the matter on the record before the court.  The People submitted the matter on the record, prior arguments, and comments in their opposition.

5.

At the December 14, 2021 hearing, the trial court indicated that it "reviewed the transcript [from the January 22, 2020 sentencing hearing] and it refreshed [its] memory regarding the events." The trial court noted that it "did not state [at the January 22, 2020 hearing] that [it] found [defendant's] failure to appear to be willful. But based upon [its] review of the transcript prior to the hearing . . . , [it] reached the same conclusion"—that defendant's failure to appear was willful. The trial court summarized its finding and the basis for its finding:

> "[Defendant] said [he] had slept in. . . . [He said his] father had had two heart attacks. [Defendant] had overslept and [he] had turned [him]self in that, [he] believe[d], the following day. And then [defendant's] mother also testified that [defendant's] father had been very ill. But between the two statements there were differing interpretations of what actually happened. [Defendant's] attorney said [defendant] believe[d] [he had] turned [him]self in the same day. Then [defendant's] mother said something about [defendant] had tried to call [his] parole agent for three days and she was out sick. And then [defendant] made a statement about [how] [he] had been picked up on a warrant from Stanislaus County.

> "So I found those conflicting statements didn't support the finding that [defendant's failure to appear] wasn't willful. To me, it was willful because I had no idea what really actually happened. And I still have that same opinion today [on December 14, 2021].

> "[Defendant's] original date for sentencing, . . . was January 9[, 2020]. The next day would have been January 10[, 2020]. And [defendant was not] before the Court until Wednesday, January 22[, 2020]. [¶] . . . [¶]

> ". . . So given – I'm not arguing with you, [defendant]. Given that lapse in time and, to me, the conflicting statements between [defendant] and [his] mother, I am finding it was a willful failure to appear. And to be honest with you, just oversleeping, to me, is also willful. I have to get up and go to work every day. I set my alarm. I'm not oversleeping.

> "THE DEFENDANT: Well, we had – my dad was in the hospital all that night. We came to court. We did set an alarm to go to court. We missed it and here we are now, you know. But if you look on my arrest record, right, when did the parole officers come pick me up? The next day.

"THE COURT: See that's it, [defendant]. I have no evidence that any of that is true.

"THE DEFENDANT: All you have to do is notify Stanislaus County.

"THE COURT: And it's not supported by – it's not supported by the facts, [defendant], that I have in front of me. In front of me I show two conflicting explanations for what happened. No support. And it was – you didn't appear 'til 11 days after your sentencing date. You weren't in court –

"THE DEFENDANT: But Modesto –

"THE COURT: I'm not arguing with you, [defendant]. That's the finding I'm making. . . . [¶] . . . [¶] . . . There were two conflicting stories between what [defendant] said and [defendant's mother] said . . . . So that's why, to me, it was willful. So that's what I'm finding."

## DISCUSSION

### I.   Senate Bill No. 567

Defendant contends his sentence must be vacated and his case remanded for resentencing in light of Senate Bill No. 567's amendments to section 1170, subdivision (b). The People argue the amendments do not apply to this case because defendant entered a plea agreement with a stipulated term of imprisonment.[3] For reasons we explain, we agree with the People.

---

[3] It is undisputed that Senate Bill No. 567 is retroactive to cases not yet final on appeal pursuant to *In re Estrada* (1965) 63 Cal.2d 740. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [holding that another ameliorative amendment to § 1170 by Sen. Bill No. 567 applies retroactively to cases not yet final on appeal].) The parties also agree defendant's sentence is not yet final on appeal. Accordingly, the issue before us is not whether Senate Bill No. 567 applies retroactively, but rather whether it applies at all in the context of a stipulated plea. (See *People v. Stamps* (2020) 9 Cal.5th 685, 700 (*Stamps*) ["The *Estrada* rule only answers the question of *whether* an amended statute should be applied retroactively. It does not answer the question of *how* that statute should be applied."].)

### A.      Principles of Statutory Interpretation

"The proper interpretation of a statute is a question of law we review de novo. [Citations.]  ' " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " '  [Citation.]  ' "[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .  [Citation.]' [Citation.]  That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]'  [Citation.]  We must harmonize 'the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.' " ' " (*People v. Lewis* (2021) 11 Cal.5th 952, 961 (*Lewis*).)  "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.)

"When statutory language is susceptible to more than one reasonable interpretation, courts must (1) select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and (2) avoid an interpretation that would lead to absurd consequences.  [Citation.]  The apparent intent of the Legislature is determined by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation." (*Merced Irrigation Dist. v. Superior Court* (2017) 7 Cal.App.5th 916, 925.) A court also "may resort to other interpretive aids, including the statute's legislative history and ' " 'the wider historical circumstances of its enactment.' " '  [Citation.] Courts may also consider the purpose of the statute, the evils to be remedied, and the public policy sought to be achieved." (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 618.)

### B. Language and History of Section 1170, Subdivision (b)

Section 1170, subdivision (b) governs imposition of a judgment of imprisonment when a statute specifies three possible terms. Prior to 2007, section 1170, subdivision (b) set the middle term as the presumptive term, but authorized the trial court to impose the upper term if it found circumstances in aggravation. (§ 1170, former subd. (b).) The trial court was required to set forth on the record the facts supporting imposition of the upper term, and those facts were required to be established by a preponderance of the evidence. (*Ibid.*; Cal. Rules of Court, former rule 4.420(b).) However, in 2007, the United States Supreme Court determined this sentencing scheme was unconstitutional because, "under the Sixth Amendment, any fact [other than a prior conviction] that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281; see *id.* at pp. 288-289.)

In response to *Cunningham*, the California Legislature amended section 1170, subdivision (b) to eliminate the presumption for the middle term and to instead provide that "the choice of the appropriate term shall rest within the sound discretion of the court." (Stats. 2007, ch. 3, § 2, eff. Mar. 30, 2007, as urgency legislation.) The intent of this urgency legislation was to "maintain stability in California's criminal justice system while the criminal justice and sentencing structures in California sentencing [were] being reviewed." (Stats. 2007, ch. 3, § 1.) This statutory language providing trial courts broad discretion to choose within the sentencing triad remained intact until January 1, 2022. (See Stats. 2007, ch. 3, § 2; see also Stats. 2020, ch. 29, § 15.)

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b), to provide: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (*Id.*, subd. (b)(1).) Subdivision (b)(2) in turn provides, "The court may

9.

impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . ." Subdivision (b)(3) creates an exception to this requirement: "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

### C.    Analysis

Defendant contends the matter must be remanded for resentencing pursuant to Senate Bill No. 567 because the court imposed the upper term without relying on defendant's prior convictions or any aggravating factors stipulated to by defendant or found true beyond a reasonable doubt by a jury, or by a judge in a court trial. We conclude the trial court did not exercise discretion with regard to the sentencing triad when it imposed the stipulated sentence set out in the negotiated plea agreement, and thus the amendments to section 1170 brought about by Senate Bill No. 567 are inapplicable under the plain language of the statute.

" ' " 'A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.' " ' " (*Stamps*, *supra*, 9 Cal.5th at p. 701.) While the plea bargain does not divest the trial court of its inherent sentencing discretion, " ' "a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain." ' " (*Ibid.*; see § 1192.5, subdivision (b) [when a "plea is accepted by the prosecuting attorney in open court and is approved by the court, . . . the court may not proceed as to the plea other than as specified in the plea"].) Thus, when the defendant and the prosecutor agree that a specified sentence will be imposed, the court does not exercise discretion within a range of otherwise permissible sentences, but

rather imposes the agreed-upon sentence. (See *People v. French* (2008) 43 Cal.4th 36, 49.)

"It is settled that a court may evaluate the fairness of a proposed sentence in determining whether to approve the bargain." (*Stamps*, *supra*, 9 Cal.5th at p. 709.) " ' "Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly." ' " (*Id.* at p. 701.) The trial court maintains " 'near-plenary' " authority to withdraw its prior approval of a plea agreement. (*Id.* at p. 708.) However, the court may not "effectively withdraw its approval [of the plea agreement] by later modifying the terms of the agreement it had approved." (*People v. Segura* (2008) 44 Cal.4th 921, 932 (*Segura*); see *id*. at pp. 931-932.)

In the instant case, the court imposed a stipulated sentence pursuant to a negotiated plea agreement. In so doing, the court's discretion was limited to approving or rejecting the bargain. The court did not exercise discretion to select between the lower, middle, or upper term based on any aggravating or mitigating circumstances. Indeed, the court was not authorized to modify the terms of the agreement by exercising discretion as to the sentencing triad, while leaving the plea agreement otherwise intact. (*Segura*, *supra*, 44 Cal.4th at p. 931.) Thus, section 1170, subdivision (b), which governs the court's exercise of discretion with regard to a sentencing triad, does not apply. (See § 1170, subd. (b)(1), (2); accord, *People v. Mitchell* (2022) 83 Cal.App.5th 1051,1057-1058, rev. granted Dec. 14, 2022 (S277314); see *Mitchell*, at p. 1059 [holding "[t]he trial court . . . did not exercise any discretion under former section 1170, subdivision (b) in selecting the lower, middle, or upper term," where the court sentenced the defendant pursuant to an agreed-upon term pursuant to a stipulated plea].)

We find support for our conclusion in *People v. Brooks* (2020) 58 Cal.App.5th 1099. There, the defendant had entered a plea of no contest to several counts in exchange for a stipulated prison term. (*Id.* at p. 1102.) Subsequently, the Legislature enacted section 1170.91, which specifies that trauma resulting from military service is a

11.

mitigating factor to be considered when a court exercises discretion as to a determinate sentencing triad. (§ 1170.91, subd. (a).) Section 1170.91 contains a retroactivity clause and a procedure for resentencing under which the defendant in *Brooks* sought relief. (§ 1170.91, subd. (b); see *Brooks*, at pp. 1104, 1106.) However, the appellate court determined this procedure did not extend to "final convictions by plea agreement specifying a stipulated imprisonment term." (*Brooks*, at p. 1106.) The court noted that any relief available pursuant to section 1170.91 would "occur through the mechanisms of the determinate sentencing triad." (*Brooks*, at p. 1107.) However, the sentencing judge in the defendant's case "never had any occasion to employ" triad discretion because the defendant had agreed to a specific term of years in his plea bargain. (*Id.* at p. 1108.) Because section 1170.91 merely "allow[s] a court to take certain mitigating factors into account, and only insofar as the court is otherwise permitted to exercise discretion in the selection of a low, middle, or high term from within the applicable sentencing triad," it was inapplicable to the defendant's sentence. (*Brooks*, at p. 1107.)

Likewise, *People v. King* (2020) 52 Cal.App.5th 783, 791, concluded relief is unavailable under section 1170.91 to a defendant sentenced to a stipulated term. The *King* court explained: "A petitioner who meets the requirements set forth in section 1170.91, subdivision (b) obtains the remedy of 'resentencing pursuant to subdivision (a).' (§ 1170.91, subd. (b)(1).) Subdivision (a) provides that the trial court shall take into account the defendant's mental health and substance abuse problems '*when imposing a term under subdivision (b) of Section 1170.*' (§ 1170.91, subd. (a)[], italics added.) A trial court that sentences under subdivision (b) of section 1170, exercises its discretion to choose an upper, middle or lower determinate term based on its consideration of factors in mitigation and aggravation. However, when a trial court sentences a defendant who has agreed to a stipulated sentence for a term of years, the trial court exercises no discretion to decide between an upper, middle and lower term and may not consider factors in mitigation and aggravation. Therefore, the trial court is not 'imposing a term

12.

under subdivision (b) of Section 1170.' (§ 1170.91, subd. (a).) As a result, a petitioner . . . who agreed to a stipulated sentence for a specific prison term cannot obtain the relief afforded under section 1170.91, subdivision (b)(1), as that petitioner cannot be resentenced under subdivision (b) of Section 1170 to an upper, middle or lower term based on factors in mitigation and aggravation." (*King*, at p. 791.)

The same reasoning applies here. Defendant agreed to a stipulated sentence pursuant to a negotiated plea agreement, and the trial court approved the agreement and imposed the agreed-upon sentence. The trial court did not exercise discretion to choose an upper, middle, or lower determinate term based on factors in mitigation and aggravation. Nor could the court exercise discretion to choose an alternative term based on factors in mitigation and aggravation without effectively withdrawing its approval of the plea. The trial court therefore did not, and could not, exercise discretion under section 1170, subdivision (b). Under the plain language of the statute, the limitations on the court's sentencing discretion set forth in section 1170, subdivision (b), are inapplicable in this context.

We further note that a contrary holding would create absurd consequences that do not further or promote the general purpose of the statute. A defendant would be permitted to enter a plea and agree to a stipulated upper-term sentence, while nonetheless asserting a statutory right under section 1170, subdivision (b)(2), to a jury trial on aggravating factors supporting the agreed-upon upper term. In practice, this would effectively eliminate the contractual obligations attendant to plea agreements involving stipulated terms of imprisonment. Meanwhile, nothing in the plain language or legislative history of Senate Bill No. 567 suggests the Legislature intended this result. The author of Senate Bill No. 567 identified two purposes behind the amendment to section 1170, subdivision (b): (1) to require "that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham*," and (2) to ensure that "individuals facing time have the ample ability to dispute information in the

13.

record that might not be true." (Assem. Com. on Public Safety, analysis of Sen. Bill No. 567, as amended May 20, 2021, pp. 3-4.) These concerns are not implicated in a plea involving a stipulated sentence, where the defendant has waived his or her constitutional right to trial and the sentence is not based on any aggravating or mitigating facts that may be in dispute.[4]

In sum, the trial court did not exercise triad discretion when it imposed the stipulated sentence set out in the negotiated plea agreement. Both the plain language of the statute and its legislative history confirm the amendments to section 1170 brought about by Senate Bill No. 567 are inapplicable in this context.

## II. Willfulness of Defendant's Failure to Appear[*]

Defendant argues the trial court erred in finding that he willfully failed to appear on January 9, 2020. The People disagree, arguing that the trial court's finding that defendant's failure to appear was willful was based upon substantial evidence. Specifically, the People argue, among other things, that defendant's failure to appear at any time on January 9, 2020, or on January 10, 2020, prior to his 10:10 a.m. arrest, was sufficient for the trial court to have disbelieved defendant's proffered explanation and conclude that defendant's failure to appear had been willful. We agree with the People. The record contains substantial evidence that defendant willfully failed to appear.

---

[4] Furthermore, we note that stipulated sentences have long been recognized as an exception to the requirements of section 1170, subdivision (b). (See, e.g., *People v. Villanueva* (1991) 230 Cal.App.3d 1157, 1162 [when sentencing the defendant to a stipulated term, the court was not required to state any reasons for the term imposed, as otherwise required under § 1170, former subd. (b)]; *People v. Childress* (1987) 189 Cal.App.3d 1220, 1222 [same]; see also Cal. Rules of Court, rule 4.412(a) ["It is an adequate reason for a sentence or other disposition that the defendant, personally and by counsel, has expressed agreement that it be imposed and the prosecuting attorney has not expressed an objection to it."].)

[*] See footnote, *ante*, page 1.

*Cruz* held that a defendant may waive the right to withdraw his or her guilty plea if he or she is "fully advised" of that right. (*Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5.) A defendant may expressly agree to a greater sentence as a sanction for engaging in certain behavior as long as his or her waiver is contained in the plea bargain itself. (*People v. Masloski* (2001) 25 Cal.4th 1212, 1221–1222; *People v. Vargas* (1990) 223 Cal.App.3d 1107, 1113.) Therefore, if a defendant agrees to a *Cruz* waiver and willfully fails to comply with the terms of the agreement (for instance, by failing to appear at the sentencing hearing) the trial court may impose a term of imprisonment greater than the bargained-for term without permitting the defendant to withdraw his or her plea. (*Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5; *Vargas, supra*, 223 Cal.App.3d at pp. 1112–1113 [a defendant may agree to imposition of a specific greater term in the event of his or her nonappearance]; see *Masloski, supra*, 25 Cal.4th at pp. 1219–1223; *People v. Puente* (2008) 165 Cal.App.4th 1143, 1146, fn. 3.) A defendant acts "willfully" if he or she knows what he or she is doing and intends to do it. (§ 7, subd. 1; *People v. Atkins* (2001) 25 Cal.4th 76, 85–86.)

A trial court must find that a defendant's failure to appear was willful by a preponderance of the evidence. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 505; *People v. Vargas* (2007) 148 Cal.App.4th 644, 652.) We review the trial court's determination for substantial evidence. (*Rabanales, supra*, at p. 509.) In doing so, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's order." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)

Defendant contends that substantial evidence did not support a finding that his failure to appear was willful because "[t]he only fact supporting the trial court's finding that [defendant] failed to appear is that [defendant] did not appear." He relies on this court's decision in *People v. Zaring* (1992) 8 Cal.App.4th 362 for the proposition that his family issues—here, his father's poor health—can render a defendant's failure to appear

15.

not willful.  In *Zaring*, the defendant was 22 minutes late to court due to an unforeseen problem with childcare.  (*Id.* at pp. 376, 379.)  The trial court revoked probation.  (*Id.* at p. 379.)  This court held the failure to report was not "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court," nor would such conduct constitute a willful violation of a probationary condition, assuming such condition was ordered.  (*Ibid.*)

Here, defendant did not appear at all on the date of his sentencing hearing. Defendant's explanation for missing the hearing was that he overslept.  However, the trial court could reasonably have concluded that if defendant had merely overslept due to a family emergency, he would have come to court to explain the error as soon as he realized it.  Instead, defendant appears to have made no attempt to appear before the Merced County Superior Court on the date of his sentencing or the following morning before he was arrested in Stanislaus County.  The trial court was in the best position to determine the credibility of the claim that defendant failed to appear because he overslept.  (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 78 [because the trial court can observe the demeanor of a witness, it is in the best position to assess credibility].)  Based on the record before us, the trial court could reasonably have concluded by a preponderance of the evidence that defendant's failure to appear was willful.  Substantial evidence supported the trial court's conclusion.[5]

---

[5] We do not agree with the trial court's comment that oversleeping after a night in the hospital with a family member, standing alone, necessarily constitutes a willful violation of a *Cruz* waiver.  We again emphasize that this is not a case where defendant overslept but then proceeded to the courthouse immediately after recognizing his mistake.

## **DISPOSITION**

The judgment is affirmed.

DETJEN, J.

WE CONCUR:


HILL, P. J.



SNAUFFER, J.