Filed 12/19/24  P. v. Rhodes CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br>DAVID JAMES RHODES,<br>        Defendant and Appellant. | A168370<br><br>(Del Norte County<br>Super. Ct. No. CRF 23-9053) |
| THE PEOPLE,<br>        Plaintiff and Respondent,<br>v.<br>DAVID JAMES RHODES,<br>        Defendant and Appellant. | A168667<br><br>(Del Norte County<br>Super. Ct. No. PRF 23-0005) |

Defendant David James Rhodes entered into a plea agreement whereby he would plead no contest to one count of failure to register as a sex offender in exchange for a "16-month lid" on the sentence imposed and a *Cruz* waiver.[1] Pursuant to the waiver, he was permitted to remain free of custody until the sentencing hearing subject to certain conditions, including that he obey all conditions of his parole in another case.  If he violated any of the conditions, he could be sentenced to the maximum term of three years.

---

[1] *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*).

1

Defendant subsequently violated the conditions of his parole and thus violated the *Cruz* waiver. The trial court sentenced him to the midterm of two years. Defendant challenges the court's finding that he violated the *Cruz* waiver and further claims the court erred in imposing the midterm sentence. We affirm.

## BACKGROUND

In 2003, defendant was convicted of one count of forcible lewd acts with a child under the age of 14 (Pen. Code, § 288, subd. (b)),[2] two counts of oral copulation with a child under the age of 14 (former § 288a, subd. (c)(1)–(2)), and one count of forcibly inducing false testimony (§ 137, subd. (b)). The trial court sentenced him to 23 years in prison. In October 2021, defendant was released on parole subject to numerous conditions, including annual registration requirements under section 290.

In April 2022, defendant was arrested in connection with a domestic violence incident involving his fiancée, C.F., and a new special condition— that he "keep . . . from having contact with [C.F.]"—was added to the conditions of his parole.[3] Five months later, defendant violated the no-contact condition, among others, and was returned to custody for 135 days.

In December 2022, the Department of Corrections and Rehabilitation (Department) provided defendant with an updated "Notice of Conditions of Parole," notifying him of several new special conditions. (Boldface & some capitalization omitted.) Defendant signed the notice and initialed the box on

---

[2] All further statutory references are to the Penal Code.

[3] "Special conditions of parole may be mandated by law or may be imposed at the discretion of [the parole] agent. Special conditions of parole that forbid conduct which is not itself criminal, must reasonably relate to a crime for which you were convicted, or must be reasonably related to deterring future criminality."

2

the notice acknowledging the imposition of additional special conditions. An enumerated list of all of the special conditions of defendant's parole, including the previously imposed no-contact condition (condition No. 68),[4] is attached to the notice. At the end of this list, there is a page stating the "Reasons" (some capitalization omitted) for the conditions and stating specifically that condition No. 68 was added "Due to a parole violation related to domestic violence." Defendant also signed the "Reasons for the Special Conditions." (Some capitalization omitted.)

Two months later, in February 2023, the Department filed a petition for revocation of defendant's parole (Super. Ct. No. PRF 23-0005) alleging four violations: failure to register; accessing, viewing, or possessing pornography; accessing or using a cell phone; and contacting C.F. The petition alleged the violations occurred on January 31, 2023.

Also in February 2023, the Del Norte County District Attorney filed a criminal complaint (Super. Ct. No. CRF 23-9053) against defendant, alleging one count of failing to annually update his sex offender registration as a transient (§ 290.011, subd. (c)) and one count of failing to annually update his registration within five days of his birthday (§ 290.012, subd. (a)), and further alleging defendant's prior section 288 conviction as a prior conviction (§ 1170.12, subd. (c)(1)).

---

[4] Condition No. 68 states: "You shall not contact or attempt to contact your crime victim [C.F.] or their immediate famil(ies). 'No contact' means no contact in any form, whether direct or indirect, personally, by telephone, in writing, electronic media, computer, or through another person, etc. and includes unnecessarily traveling past, or loitering near where you know or should reasonably know your victim(s) frequents, resides, is employed, or attends classes."

***Negotiated Disposition in the Criminal Case***

Defendant subsequently entered into a negotiated disposition to resolve the criminal case, pursuant to which he would plead no contest to the second failure to register count, in exchange for dismissal of the remaining count and special allegation, a 16-month sentencing lid, and presentencing release under a *Cruz* waiver.

The *Cruz* waiver was subject to a number of conditions, including that defendant obey all laws, appear at all times and places ordered by the court, report to parole immediately upon his release, and obey all conditions of his parole. If defendant violated any of the terms, he would be sentenced, according to the court minutes, "to the max term of 3 yrs."

At the change of plea hearing, the prosecutor stated he agreed to the *Cruz* waiver "upon the condition" defendant "appear, to obey all laws, and . . . follow all terms of his parole," and if defendant failed to do so, "he could be sentenced to the maximum of three years." Defense counsel, in turn, stated he had "explained that to [defendant], and he understands that." And defendant, himself, confirmed on the record the waiver had been explained to him and he agreed with the terms.

***Parole Revocation Petition***

One month after defendant was released under the *Cruz* waiver, the Department filed a second petition for revocation, alleging defendant had violated the conditions of his parole by being in contact with C.F. (Super. Ct. No. PRF 23-0010).

At the violation hearing, defendant's parole officer, Thorin McCovey, testified he had become defendant's parole officer in December 2022. Defendant's prior parole officer had imposed the no-contact condition based on a "domestic-violence situation" involving C.F. When McCovey took over,

he added two new special conditions, condition Nos. 53 and 54, which dealt with possession of "photography equipment of any kind." McCovey had defendant sign the updated special conditions, which included the previously imposed no-contact condition. Four months later, in April 2023, McCovey saw defendant getting into a car with C.F., who McCovey described as having "mobility issues." When McCovey asked defendant what he was doing with her, defendant replied he "was helping her." McCovey allowed defendant to take C.F. home but told him to report back. When defendant did so, McCovey arrested him.

Defendant did not testify.

The prosecuting attorney argued it was a "very clear-cut violation of parole" since defendant's parole conditions included a no-contact condition and McCovey had personally witnessed defendant with C.F. in violation of that condition.

Defense counsel did not take issue with "the [P]eople's factual rendition. My client was on parole. He had certain conditions, and he was found by Agent McCovey to be in violation of those terms and conditions. [¶] My argument is that in the grander—or the greater scheme of things at issue isn't just whether or not there was a violation of parole, but whether this would constitute a violation of the *Cruz* waiver that was issued in the cases that are on for sentencing tomorrow. . . ."

Defense counsel asked the court to take judicial notice of the court minutes in the domestic violence case that recounted the court (in fact, the same judge) had stated, " 'The court determines to issue a conduct order in this case, but it does not affect any conditions that may exist in other cases,

5

including parole.' "[5]  Counsel argued defendant had been "so careful with his conditions."  Counsel acknowledged, however, that the "minutes from the CRM 22-9509 [the domestic violence case] are not a defense because the court was very clear that the conduct order" the court imposed "in that case does not abrogate or take away any conditions of parole.  Specifically, that's in the court minutes, and I don't dispute that."  But, argued counsel, defendant "remembered the court saying there's a conduct order" and defendant "obviously," "forgot the more important part which was, okay, I can't be around [C.F.] because parole says I can't."  In other words, counsel essentially maintained defendant was confused about the "conduct order" issued in his domestic violence case and the "no-contact condition" of his parole.

The trial judge acknowledged it had, indeed, ruled in the domestic violence case that "a conduct order was sufficient."  But "Parole did not agree" and the Department "made a stricter condition."  "I, as the judge, would say that the condition was stricter than it needed to be, but that's—their area of expertise and control is different from mine.  So if they wanted to put a stricter and did, then [defendant] has to comply with those stricter conditions."  Moreover, defendant had signed those conditions, thus "saying, I agree to that condition.  So I think he is clearly in violation of terms of parole."

***Sentencing Hearing in the Criminal Case***

Prior to the sentencing hearing in the criminal case, the probation department filed a report recommending the court impose the aggravated three-year term, identifying four factors in aggravation, all of which related

---

[5]  The trial court took judicial notice of the case file in the domestic violence case and the October 20, 2022, minutes from a hearing within that case (case No. CRM 22-9509).  Neither the file nor the court's minutes are a part of the record on appeal.

to the "record of conviction"—namely, that defendant's "prior convictions as an adult . . . are numerous or of increasing seriousness," defendant "has served a prior prison term or county jail under section 1170(h)," defendant was on parole when the crime was committed, and defendant's prior performance on parole was unsatisfactory. Additionally, since his release on parole in October 2021, defendant had "accumulated at least 17 known parole violations." No factors in mitigation were identified.

Although the probation report recommended imposition of the maximum three-year prison term, the prosecutor asked the court to impose the two-year midterm "given that I haven't proved aggravating factors in this case."

Defense counsel argued there was "mitigating information" the court should consider. Namely, that a tree had fallen on defendant's trailer, and one of things defendant "was anxious to do upon release for the *Cruz* Waiver was to go up to Brookings and take care of his personal items there and recover what he could and dispose of the rest." Counsel further asserted defendant had been put "between a rock and a hard place" since, in the domestic violence case, the court had "told him he could have contact with the alleged victim of the court order." Counsel acknowledged the "court did attach a caveat to it in the court minutes that the parole conditions would still be, you know, still there." But defendant had "latched onto the judge telling him he could have contact with her." Counsel maintained defendant was otherwise "doing everything he needed to do" and therefore asked the court "to sentence my client to 16 months. I cannot argue it wasn't a *Cruz* Waiver violation. . . . But in my mind, it's a de minimis violation."

At the conclusion of arguments, the court observed the probation report indicated there had been "17 violations, failures to attend class, just

7

numerous violations of the terms of parole. Apparently, [the Department] did not file petitions on many of them." But there's a "clear pattern." Even without considering those violations, because they had not all been "proven up," the court pointed out defendant had committed the current offense while "released on [parole] on terms and conditions," and he had violated those. The court lastly commented "those *Cruz* releases, that's a real privilege to be released pending the sentencing. And the commitment is to obey all laws. [¶] And so I think there was a violation of the *Cruz* Waiver. And if we don't— if there isn't some consequence for those, there—then people will laugh that off. And I don't think that's good in the long run to allow someone to violate the *Cruz* Waiver. [¶] The circumstances—I remember the testimony. And when [the parole officer] caught [defendant] there with [C.F.]—she's a willing victim. But he was on strict parole terms not to be there. And that's a violation of orders. So there's a violation of the *Cruz* Waiver. [¶] I think that the added . . . time is appropriate under the circumstances. . . . I'm going to sentence to two years because the *Cruz* Waiver was violated."

## DISCUSSION

### *Violation of the* Cruz *Waiver*

Section 1192.5 provides that a trial court may not impose punishment more severe than that agreed upon by the parties at the time of entry of plea without giving notice to the defendant and providing him the ability to withdraw his plea. At entry of plea, the court must advise the defendant that (1) its approval (of the plea agreement by accepting the plea) is not binding, (2) it may withdraw its approval in the light of further consideration of the matter, and (3) in such cases, the defendant shall be permitted to withdraw his plea if he desires to do so. (§ 1192.5, subd. (c).)

8

The *Cruz* decision permits a defendant to enter a limited waiver of section 1192.5 with the agreement of both parties to the plea and agree to a sentence in excess of the term that was bargained for if he willfully fails to appear for sentencing or violates other agreed-upon conditions. (*Cruz, supra,* 44 Cal.3d at p. 1254, fn. 5.) A defendant may expressly agree to a greater sentence as a sanction for engaging in certain behavior, as long as the waiver is contained in the plea bargain itself. (*People v. Masloski* (2001) 25 Cal.4th 1212, 1221–1222 (*Masloski*); *People v. Vargas* (1990) 223 Cal.App.3d 1107, 1113 (*Vargas*).)

Thus, if a defendant agrees to a *Cruz* waiver and thereafter willfully fails to comply with the terms of the agreement (for instance, by failing to appear at the sentencing hearing) the trial court may impose a term of imprisonment greater than the bargained-for term without permitting the defendant to withdraw his plea. (*Cruz, supra,* 44 Cal.3d at p. 1254, fn. 5; *Vargas, supra,* 223 Cal.App.3d at pp. 1112–1113 [a defendant may agree to imposition of a specific greater term in the event of his nonappearance]; see *Masloski, supra,* 25 Cal.4th at pp. 1219–1223; *People v. Puente* (2008) 165 Cal.App.4th 1143, 1146, fn. 3 (*Puente*).) " 'Willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or the omission referred to. It does not require any intent to violate law, to injure another, or to acquire any advantage." (§ 7, subd. (b)(1).)

Whether a defendant has willfully violated a condition of his release is determined by the trial court under a preponderance of the evidence standard and reviewed for substantial evidence. (*People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.) " 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the

9

power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination. . . .' [Citation.] . . . 'We do not reweigh or reinterpret the evidence; rather, we determine whether there is substantial evidence to support the inference drawn by the trier of fact.' " (*Ibid.*)

### *Willful Violation Finding*

Defendant first contends the trial court erred by failing to expressly find that he *willfully* violated the *Cruz* waiver. Citing to the comment by the court at the end of the sentencing hearing which we have previously quoted, he suggests the court erroneously limited its inquiry to whether or not there was a violation and did not proceed to determine whether any violation was willful.

However, a "lower court judgment is presumed correct, and when a lower court has made no specific findings of fact, it is presumed that the court made such implied findings as will support the judgment." (*Hall v. Municipal Court* (1974) 10 Cal.3d 641, 643.)

Defendant cites no authority supporting the proposition a trial court must make an express finding of willfulness in conjunction with a *Cruz* violation. Moreover, similar arguments have been rejected in analogous situations. (See *Puente, supra*, 165 Cal.App.4th at p. 1150 [rejecting argument due process was violated because trial court failed to explain why defendant was found in violation of *Cruz* waiver]; see also *People v. Carr* (2006) 143 Cal.App.4th 786, 792 [rejecting argument due process required trial court to make detailed statement of reasons of why defendant was found in violation of *Vargas* waiver].)

10

The record also amply supports a reasonable inference the trial court implicitly found defendant's parole violation was willful. Defense counsel never disputed there was a violation of the *Cruz* waiver. To the contrary, he acknowledged, "We had a parole hearing about that and whether or not he was in violation of the *Cruz* waiver . . . [and] the court found there was a violation of the *Cruz* waiver." In fact, counsel went on to state, "we conceded it was a *Cruz* Waiver violation. I'm not saying it wasn't. It doesn't mean the guillotine has to be dropped." Rather, defense counsel argued the *Cruz* violation was de minimis and warranted only the low-term sentence of 16 months.

There is no indication in the record the trial court did not understand there is a willfulness requirement attendant to a *Cruz* waiver violation. And the court afforded the prosecutor and defense counsel ample time to argue their respective positions as to whether defendant should be held to the conditions of the waiver. Notably, the court stated it was aware of the circumstances of the parole violation, remembered the testimony at the revocation hearing, and recalled that counsel had argued defendant was not aware of the no-contact parole condition, or at worst confused by, the conduct order that was issued in the domestic violence case. It is clear the court was simply not persuaded by counsel's argument. Indeed, at the change of plea hearing, the court had expressly told defendant he was required to comply with his parole conditions and emphasized "you've got to read your conditions."

In sum, it is entirely appropriate on this record to presume the trial court impliedly found defendant willfully violated the *Cruz* waiver.

11

***Substantial Evidence***

Defendant also contends no substantial evidence supports an implied finding he willfully violated the *Cruz* waiver. Defendant claims he did not understand he was subject to a no-contact condition and thought he was in compliance with the conduct order that had been issued in the domestic violence case. Defendant makes the following observations in this regard:

First, he points to the fact the no-contact special parole condition was not included in the original conditions of his parole when he was released in October 2021. Rather, it was added at some point prior to December 2022 by his prior parole officer. He acknowledges signing the updated notice of special conditions in December 2022, which included the previously imposed no-contact condition. But he claims his then new parole officer, McCovey, focused on the two new special conditions, condition Nos. 53 and 54, and not condition No. 68. He also points out McCovey was "unable to recall whether he went through the terms and conditions" with defendant.

Second, defendant points to the asserted "discrepancy" between the trial court's October 2022 conduct order in the domestic violence case and the no-contact special condition of parole, as having "created confusion and uncertainty" for him.

Third, he points to the fact he was complying with his ankle monitor and sought permission from McCovey before traveling to his trailer, showing "an intention to follow" his parole conditions "rather than violate them." He also remained calm when McCovey found him with C.F. and "did not attempt to run, lie, or deny his conduct," further showing "his belief that he was permitted peaceful contact with C.F."

However, there is more to the record here.

To begin with, McCovey testified that any time conditions are added, based on parole violations or criminal conduct, the Department's policy is to have parolees sign updated conditions. While parole officers "usually review conditions of parole" when parolees are released, "the conditions remain in place regardless if we read them to them every time they're released from jail." In short, the fact that McCovey may not have read the updated conditions to defendant in their entirety does not alter the force and effect of any of the enumerated conditions. Further, as defendant concedes, he signed the updated conditions, which included the previously imposed no-contact condition, in December 2022. There is no evidence defendant was prevented in any way from reading the conditions or that he did not read them before he signed both the updated notice and attached statement of reasons.

While the trial court may have expressed the view in the domestic violence case that a conduct order was sufficient, the court acknowledged the Department could conclude a more stringent no-contact condition was appropriate. In fact, as defense counsel conceded, the court "was *very clear* that the conduct order in [the domestic violence] case does not abrogate or take away any conditions of parole." (Italics added.) Moreover, defendant signed the updated notice of parole conditions *after* the court issued the conduct order in the domestic violence case. Thus, if he had had any questions about the no-contact parole condition, he could have sought clarification at that time. Further, before accepting the *Cruz* waiver, the court expressly told defendant, "as an added condition of your *Cruz* release, you are required to follow all conditions of your parole. [¶] Now, if that means you got to report to them or something—*you've got to read your conditions*." (Italics added.) The court also instructed defendant to report to both his parole officer and probation upon release on his waiver, "so we don't

13

have any ifs about it."  Thus, even if defendant was somehow confused by the conduct order issued in the domestic violence case, he was specifically told by the trial court in the criminal case he was required to comply with his parole conditions and he needed to review those conditions.

Defendant additionally points out there is some question as to the exact date the no-contact condition was added to his parole conditions.  While defendant suggests the condition was added in September 2022,[6] the April 2023 parole revocation petition alleges the condition was added in April 2022, and defendant was returned to custody on September 28, 2022, for violating the condition.  But regardless of whether the condition was added in April 2022 or September 2022, defendant received and signed an updated notice of all special parole conditions in December 2022 and was arrested again in January 2023—four months before the violation at issue here—for, among other things, violating the no-contact condition.  Thus, we are hard pressed to see how defendant can argue that four months later, when he was again arrested for violating his parole, he was unaware of, or confused about, the no-contact special parole condition.

We agree with defendant that if a person's inability to comply with a parole or probation condition was "because of circumstances beyond his or her control," it was not a " 'willful' " violation.  (See *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295; see e.g., *People v. Galvan* (2007) 155 Cal.App.4th 978, 982–983 [deportation prevented probationer from reporting to probation

---

[6]  In his briefs, defendant cites to the Reporter's transcript (667 RT 11, 61) to show the condition was added in September 2022.  However, page 11 of that transcript shows an index and page 61 refers to Parole Officer McCovey's testimony, in which McCovey states, "The prior parole agent, who was assigned at the time, imposed that condition, based on that domestic-violence situation."  Neither record cite gives the date the condition was added.

14

officer in person]; *People v. Zaring* (1992) 8 Cal.App.4th 362, 379 ["confronted with a last minute unforeseen circumstance" appellant arrived "approximately 22 minutes late to court, having driven some 35 miles from her home"].) However, none of defendant's proffered reasons show he failed to comply with the no-contact special parole condition due to circumstances beyond his control.

In sum, ample evidence supports the trial court's implied finding that defendant willfully violated the no-contact condition of his parole and, in turn, the parole-compliance condition of his *Cruz* waiver.

### *Imposition of Midterm*

When a defendant violates a *Cruz* waiver, the court is no longer obligated to impose the negotiated sentence, and one of two things happen. Either the defendant is sentenced to an agreed-upon more stringent sentence, or the defendant is sentenced as though his plea was an open plea to the court. (See, e.g., *Masloski, supra*, 25 Cal.4th at pp. 1215, 1222–1223.)

Accordingly, defendant's *Cruz* violation meant the negotiated 16-month lid was off the table. The record as to exactly what sentence would be imposed instead, is not entirely clear. According to the minutes of the change of plea hearing, if the defendant violated "any terms" of the *Cruz* waiver, he "will be sentenced to the max term of 3 yrs." However, the Probation Department understood the consequence of a *Cruz* waiver violation would be imposition of a sentence "up to the maximum term or a matter of three (3) years." Both the prosecutor and defense counsel shared this same understanding, as the prosecutor urged the court to impose the midterm of two years and defense counsel urged the court to impose the low term of 16 months. Since the court, itself, imposed not the three-year maximum term, but the two-year midterm, it is also clear it intended that the consequence of

15

a *Cruz* waiver violation was to render defendant's plea the equivalent of an open plea to the court.

Defendant maintains the trial court abused its discretion in imposing the two-year midterm because it did so solely on the basis of the *Cruz* waiver violation and failed to engage in the balancing of aggravating and mitigating circumstances called for by section 1170 and California Rules of Court, rules 4.421 (identifying aggravating factors) and 4.423 (identifying mitigating factors).[7] According to defendant, instead of focusing on the relevant sentencing factors, the trial court focused exclusively on appellant's conduct that violated the *Cruz* waiver which was "entirely unrelated and occurred subsequent to his offense for failure to register."

The Attorney General responds it was not improper "for the court to rely only on the *Cruz* waiver violation as a reason to impose the midterm sentence," asserting "that is precisely what the *Cruz* waiver violation allowed the court to do," citing *Masloski, supra,* 25 Cal.4th 1212. The issue in *Masloski* was whether a sentencing sanction for the defendant's failure to appear was a permissible *Cruz* waiver that was part of the negotiated disposition, or whether it was an impermissible stand-alone sanction for failure to appear. (*Id.* at pp. 1220, 1222.) The Supreme Court concluded that despite the trial court's problematic use of the term " 'contract,' " the court had accepted a *Cruz* waiver as part of the negotiated disposition. (*Id.* at pp. 1222–1223.) Accordingly, when the defendant failed to appear, the trial court could properly treat the plea " 'as an open plea' " meaning the court was " 'not bound' " by the negotiated sentence and could impose as much " 'as six years in state prison if the facts warrant[ed] it.' " (*Id.* at pp. 1215, 1223.) The trial court also properly refused to allow the defendant to withdraw her plea.

---

[7] All further rule references are to the California Rules of Court.

"Rather, when defendant failed to appear on the date set for sentencing, she was sentenced to a term of four years in prison, in accordance with the terms of the plea agreement. The provisions of section 1192.5 that permit a defendant to withdraw his or her plea if the court withdraws its approval of the plea agreement were not implicated, because the court adhered to the terms of the plea agreement by sentencing defendant to a prison term that did not exceed (and in fact was less than) the maximum sentence authorized by the plea agreement in the event that defendant failed to appear on the date set for sentencing." (*Id.* at pp. 1223–1224.)

Thus, *Masloski* holds that where there is a permissible *Cruz* waiver in place and there is a violation of that waiver, the defendant is not entitled to withdraw his or her plea. Rather, the defendant is subject to sentencing in accordance with the waiver, which may be treating the plea as an open plea to the court, empowering the court to impose any sentence consistent with the applicable sentencing law.

Accordingly, defendant is correct the trial court had to impose a sentence in accordance with the sentencing law applicable to his failure to register conviction since the *Cruz* waiver did not provide for a specific alternative sentence if defendant violated the conditions of the waiver. We do not agree, however, with defendant that the record demonstrates he was punished "solely" for violating the *Cruz* waiver and not for the crime of which he was convicted.

Defendant again focuses on the trial court's final comment at the sentencing hearing—that *Cruz* releases are "a real privilege" and "the commitment is to obey all laws. [¶] And so I think there was a violation of the *Cruz* Waiver. And if we don't—if there isn't some consequence for those, there—then people will laugh that off. And I don't think that's good in the

17

long run to allow someone to violate the *Cruz* Waiver.  [¶] The circumstances—I remember the testimony.  And when [the parole officer] caught [defendant] there with [C.F.]—she's a willing victim.  But he was on strict parole terms not to be there.  And that's a violation of orders.  So there's a violation of the *Cruz* Waiver.  [¶] I think that the added . . . time is appropriate under the circumstances. . . .  I'm going to sentence to two years because the *Cruz* Waiver was violated."

However, defendant's singular focus on this comment disregards other aspects of the record.  For example, the probation report stated that since defendant's release from prison, he had accumulated "a total of 17 known parole violations," five of which "were for failing to attend sex offender treatment," wherein "registration requirements are discussed regularly."  "As the defendant is required to participate in sex offender treatment, where they discuss registration requirements in both group and individual settings, he has no valid excuse as to why he failed to do so within the time frame."[8]

The prosecutor urged the court to impose the two-year midterm for the registration offense, arguing defendant's "sex convictions" were "horrific," he "was sentenced to 23 years" for the offenses, and "[i]f anyone should . . . register as a sex offender, it would be someone" serving that long of a

---

[8] Although defense counsel objected to the trial court's reliance on unproven allegations, he made no objection to the court's consideration of any other matters discussed in the probation report and therefore has forfeited any such objections on appeal. (See *People v. Welch* (1993) 5 Cal.4th 228, 234 ["It is settled that failure to object and make an offer of proof at the sentencing hearing concerning alleged errors or omissions in the probation report waives the claim on appeal."]; see also *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 725 ["The probation report is generally a proper source of information upon which judicial discretion may be exercised when a defendant is arraigned for sentencing."], disapproved on another ground as stated in *People v. Green* (1980) 27 Cal.3d 1, 33–34.)

18

sentence for "offenses on a child that were by force." And while defendant tried "to paint" his failure to register "as just a technical violation," registration is not for his benefit, but "something that protects the public." When "we look at sex offenders who have to register pursuant to [section] 290, this is about one of the worst ones we have seen. Given that, I think he deserves every bit of two years."

Defense counsel made no objection to the prosecutor's argument, and, indeed, commenced by stating "Well, your Honor, my client doesn't deny his past, and he paid his debt to society for convictions that were from, what, 1998 and 2003." Instead, counsel argued defendant had largely been compliant with his parole and the violating conduct that had caused his *Cruz* waiver violation was both de minimis and due to his confusion in the wake of the court imposing a conduct order in his domestic violence case and the Department imposing a no-contact special condition of parole. Defendant "believed he was following the court order and he was abiding [by] all the other terms of his parole condition." Thus, in contrast to the prosecutor, and at odds with the position defendant is advancing on appeal, it was defense counsel who focused on defendant's assertedly innocuous parole violation resulting in the *Cruz* waiver violation, rather than on the registration crime of which defendant had been convicted. "I'm simply arguing," said counsel, that the *Cruz* violation was "a de minimis violation and the court shouldn't sentence him to more than 16 months."

In response, the prosecutor took issue with defense counsel's assertion defendant had "paid his debt to society." "No, he hasn't," argued the prosecutor. "His debt to society includes registering so everybody knows that this guy might be living next to them or he's in the area. . . . His debt to

society is forever." As the prosecutor saw it, the plea deal and a two-year midterm were "really a gift to him."

Given defendant's approach at the sentencing hearing—arguing that his *Cruz* violation was "de minimis" and therefore the court should impose the low term of 16 months—we first conclude defendant invited the supposed error of which he complains on appeal. In context, the comments by the trial court that defendant now criticizes on appeal were plainly in response to the argument his own attorney advanced. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49 [" 'If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal.' "].)

Furthermore, there was ample information and argument presented to the court on the salient sentencing issue, i.e., the appropriate punishment for defendant's failure to register. We must, of course, presume the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978, superseded on other grounds as indicated in *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) And "[u]nless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules." (*People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322; rule 4.409; accord, *People v. Knowles* (2024) 105 Cal.App.5th 757, 765.) The record here, considered in its entirety, does not "affirmatively demonstrate otherwise."

As the prosecutor recognized, in urging the court to impose the midterm, he did not need to present competent evidence establishing aggravating factors in accordance with section 1170, subdivision (b). (See *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929 ["[section 1170,] subdivision (b)(2) of the statute—the provision requiring proof to a jury beyond a reasonable doubt—is directed by its terms solely to the

prerequisites for imposing the upper term," italics omitted]; see generally *People v. Hilburn* (2023) 93 Cal.App.5th 189, 202 [imposition of midterm does not implicate *Apprendi v. New Jersey* (2000) 530 U.S. 466]; Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2024) ¶ 12:5.)  Accordingly, we are hard pressed to understand defendant's argument that by imposing the midterm, the trial court violated the dictates of section 1170.

Moreover, " 'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice.' " (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)  A trial court may also " 'minimize or even entirely disregard mitigating factors without stating its reasons.' " (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258; see *People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [court need not explain reasons for rejecting mitigating factors].)

Here, the court was fully aware defendant had failed to register while he was on parole—an aggravating factor sufficient to justify imposition of the midterm, rather than the low term.  (See rule 4.421(b)(4) [defendant "was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed"].)  The court also was fully aware of defendant's mitigation argument, advanced by counsel and set forth in defendant's own letter attached to the probation report.  Indeed, the court noted it had read the probation report and defendant's attached letter setting forth the "mitigating information" defendant now asserts the court failed to consider.

In sum, defendant has not met his burden to show the court abused its discretion in sentencing him to the midterm of two years.

## DISPOSITION

The judgment is AFFIRMED.

21

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Langhorne Wilson, J.

A168370 & A168667, People v. Rhodes