Filed 1/6/25  P. v. Madrigal CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B328207 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA482074-01) |
| v. | |
| JOAQUIN MADRIGAL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ray G. Jurado, Judge.  Affirmed.

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Idan Ivri and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

The People charged Joaquin Madrigal with battery against a man. Madrigal entered into a plea agreement in which he would be released on his own recognizance, and if he obeyed all laws while awaiting sentencing, he would be sentenced to a misdemeanor and placed on summary probation. Otherwise, he would be sentenced to a felony. Prior to sentencing, Madrigal was arrested for assaulting a woman. At an evidentiary hearing, the trial court imposed a felony sentence after finding that Madrigal violated the terms of his plea agreement. On appeal, Madrigal argues the trial court denied him due process by refusing to allow the arresting officer to testify about the victim's statement that she did not see or know who attacked her. We conclude the trial court did not err in excluding the proffered testimony, and even if it did, any such error was harmless. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Madrigal's plea agreement

In an information filed on November 18, 2019, Madrigal was charged with one count of battery with serious bodily injury (Pen. Code[1] § 243, subd. (d)). According to the preliminary hearing testimony, Madrigal grabbed the victim on the street and threw him facedown to the ground. The victim sustained a head injury, and had to be resuscitated at the scene. As passerby attended to the victim, Madrigal sat on a nearby bench until he was arrested.

---

[1]    Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

On May 19, 2022, Madrigal entered into a plea agreement with the prosecution.  Under the terms of the agreement, the information was amended to add a count for assault likely to produce great bodily injury (§ 245, subd. (a)(4)).  Madrigal pled no contest to that offense, and the original charge was dismissed.  The parties agreed to continue sentencing for six months with Madrigal released on his own recognizance.  If Madrigal "obey[ed] all laws and stay[ed] out of trouble" during that six-month period, he would be convicted of a misdemeanor and sentenced to one-year summary probation.  If, however, Madrigal violated the terms of the plea agreement, he would be convicted of a felony and subject to a maximum sentence of four years in state prison.  The court set the sentencing hearing for November 18, 2022.

## II.      Hearing on alleged violation of plea agreement

On November 6, 2022, Madrigal was arrested. On January 4, 2023, the trial court held a hearing to determine whether Madrigal violated the terms of his plea agreement by failing to obey all laws.  At the start of the hearing, the prosecution informed the court that there were three witnesses in attendance:  Ruben Medellin and Long Beach police officers Ismael Martinez and Danny Velasquez.  Madrigal's counsel asked that the officers "be called for the defense as well."

The prosecution first called Medellin to testify.  According to his testimony, on the afternoon of November 6, 2022, Medellin and his wife were driving in Long Beach when he saw Madrigal on a sidewalk, striking a woman with a closed fist.  Madrigal punched the woman in the face four times.  As Medellin's wife called the police, he pulled over and walked to within 20 feet of the woman and Madrigal.  The woman appeared to be unconscious, and was lying motionless while bleeding from her

mouth. Madrigal sat on a nearby planter. The police arrived less than two minutes later and arrested Madrigal.

The prosecution next called Officer Velasquez to testify, but the trial court stated, "I think I've heard enough." In response, defense counsel advised the court that he wanted to call Officer Martinez as a witness. When asked for what purpose, defense counsel explained that, when Officer Martinez took the victim's statement, she said "she did not see who struck her, did not know who struck her, and the only person that she knew that was there was a man named Emmett, who is her friend."

The trial court noted this was not a preliminary hearing, but rather a proceeding to determine whether Madrigal violated the law by being arrested for assault. Defense counsel replied that an arrest did not necessarily mean that a crime was committed. The court disagreed, stating, "In this case even if that were an issue, I don't think it is, but I think a crime was committed." Defense counsel then told the court, "[F]or the record, we would like to present evidence to rebut the prosecution's evidence that they've been able to present. [¶] And we submit, Your Honor." At that time, the trial court found that Madrigal violated the terms of his plea agreement by failing to obey all laws.

The court sentenced Madrigal to three years in state prison. The sentence was satisfied by time served based on Madrigal's custody credits.

Madrigal filed a timely appeal.

## DISCUSSION

On appeal, Madrigal argues the trial court violated his constitutional right to due process when it did not allow him to call one of the arresting officers to testify at the hearing on the

4

alleged violation of his plea agreement.  The Attorney General asserts the trial court did not err in disallowing the proposed testimony, and even if there was error, it was harmless.  We find no error and further note that any error was harmless.

## I.    Governing law

Under section 1192.5, if a plea agreement is accepted by the prosecution and approved by the trial court, the defendant "cannot be sentenced on the plea to a punishment more severe than that specified in the plea."  (*Id*., subd. (b).)  The statute also provides that if the court subsequently withdraws its approval of the agreement, the defendant "shall be permitted to withdraw the plea if the defendant desires to do so."  (*Id*., subd. (c).)

In *People v. Cruz* (1988) 44 Cal.3d 1247 (*Cruz*), the California Supreme Court recognized that a defendant may expressly waive his or her rights under section 1192.5 at the time the plea is accepted, such that if the defendant willfully fails to appear for sentencing or violates other agreed-upon conditions, the court "may withdraw its approval of the defendant's plea and impose a sentence in excess of the bargained-for term."  (*Cruz*, at p. 1254, fn. 5.)  This type of plea agreement is commonly known as a *Cruz* waiver.  (*People v. Fuentes* (2023) 87 Cal.App.5th 1286, 1291; *People v. Puente*  (2008) 165 Cal.App.4th 1143, 1146, fn. 3.)  When the plea agreement provides for a specified high sentence if the defendant fails to appear or meet certain conditions, it may also be referred to as a *Vargas* waiver, based on a similar type of agreement approved in *People v. Vargas* (1990) 223 Cal.App.3d 1107, 1113.  (*People v. Puente*, at p. 1145, fn. 2.)

A *Cruz* or *Vargas* waiver may include a provision requiring the defendant not to violate any laws while released on his or her own recognizance as a condition of the plea agreement.  (*People v.*

5

*Rabanales* (2008) 168 Cal.App.4th 494, 499 (*Rabanales*); *People v. Carr* (2006) 143 Cal.App.4th 786, 788 (*Carr*).)  There is no right to a jury trial or to a finding of guilt beyond a reasonable doubt on the question of whether the defendant violated the terms of a *Cruz* or *Vargas* waiver.  (*Rabanales*, at pp. 501–502.)  Rather, the trial court applies a preponderance of the evidence standard to determine whether the defendant breached the plea agreement by violating the conditions of his or her release.  (*Id.* at p. 509; *Carr*, at p. 792.)  An appellate court generally reviews a trial court's determination that the defendant violated a *Cruz* or *Vargas* waiver for substantial evidence.  (*Rabanales*, at p. 509.)

## II. The trial court did not violate Madrigal's due process rights in excluding his proffered evidence

In challenging the trial court's finding that he violated his plea agreement, Madrigal contends the court deprived him of his right to be heard and present evidence on his behalf.  Madrigal specifically claims the court denied him due process when it refused to allow Officer Martinez to testify about the victim's statement that she did not see or know who attacked her.

Our Supreme Court has not addressed the scope of due process protections to be afforded defendants in proceedings to determine whether there was a *Cruz* or *Vargas* waiver violation.  However, in other procedural contexts, the Court has recognized that " ' "[t]he essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' " [Citations.]  The opportunity to be heard must be afforded "at a meaningful time and in a meaningful manner." ' " (*In re Harris* (2024) 16 Cal.5th 292, 322.)  The Supreme Court also has explained that " '[d]ue process does not call for the same procedures in every situation.

Instead, " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " ' " (*People v. Delgadillo* (2022) 14 Cal.5th 216, 228.)

In *Carr*, the Court of Appeal held there was no due process violation where the defendant "had adequate notice and ample opportunity to prepare and mount a defense to the allegation he violated his *Vargas* waiver by breaking the law." (*Carr*, *supra*, 143 Cal.App.4th at p. 791.) The court declined to apply the due process requirements of probation revocation cases to an alleged *Vargas* waiver violation. (*Id*. at p. 789.) The court also rejected the defendant's claim that the trial court violated his due process rights by giving him inadequate notice and making insufficient findings. (*Id*. at pp. 790–792.) The court reasoned that nothing in the *Vargas* line of cases required a formal petition setting forth the alleged violation of the *Vargas* waiver, or a detailed, written statement of reasons for finding a violation. (*Id*. at pp. 791–792.)

In this case, the record demonstrates that the trial court provided Madrigal with adequate notice of his alleged violation of his plea agreement and an opportunity to be heard on the matter. Madrigal was arrested for violently assaulting a woman in early November 2022, and the trial court held an evidentiary hearing on the alleged violation about two months later in January 2023. Madrigal was present at the hearing, and was represented by his counsel. During Medellin's testimony, defense counsel was able to cross-examine the witness about his recollection of the assault, including his identification of Madrigal as the perpetrator. Based on Medellin's eyewitness testimony, the trial court decided it did not need to hear from either of the officers who arrested Madrigal at the scene. When defense counsel indicated that he wanted to call one of the officers to testify, the court asked for an offer of

7

proof. Defense counsel explained that he intended to elicit Officer Martinez's testimony that, when he took the victim's statement, she said that she did not know or see who struck her, and that the only person she knew at the scene was her friend, Emmett.

Based on this offer of proof, the trial court reasonably could conclude the evidence had minimal probative value given that Officer Martinez could only testify that the victim denied ever seeing her assailant. On appeal, Madrigal argues that Officer Martinez's testimony was potentially exculpatory because the victim "excluded [Madrigal] from the scene" in her statement. However, as described by defense counsel, the victim never said Madrigal was not present at the scene. Rather, she said the only person she knew at the scene was a friend named Emmett. Thus, in her statement to Officer Martinez, the victim neither placed Madrigal at the scene of the crime, nor excluded him from being there. She simply stated that she did not see or know who attacked her, which was consistent with Medellin's account that the victim appeared to be unconscious during the assault. Officer Martinez's testimony would not have provided a contrary version of events or otherwise exculpated Madrigal.

In making his offer of proof, defense counsel did not contend that Officer Martinez could provide relevant testimony on any other matter related to the alleged crime. Moreover, while defense counsel stated at the hearing that he wanted to "present evidence to rebut the prosecution's evidence," he did not ask to call any witnesses to testify other than Officer Martinez. On this record, the trial court reasonably could decide it did not need to hear from Officer Martinez to determine by a preponderance of the evidence whether Madrigal violated his *Cruz* waiver by committing the assault. Therefore, to the extent

8

Madrigal had a right to confront and cross-examine witnesses on his alleged violation of the *Cruz* waiver, the trial court did not deny Madrigal due process in excluding the proffered evidence.

For these same reasons, we are convinced that the trial court would have found that Madrigal committed the assault in violation of his *Cruz* waiver even if it had allowed the defense to call Officer Martinez as a witness. While the victim was unable to identify her assailant in her statement to the police, Medellin's eyewitness testimony provided compelling and uncontroverted evidence that Madrigal was the perpetrator. Accordingly, under any standard of prejudice, any alleged error in excluding Officer Martinez's testimony was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [state law error is harmless if it is not reasonably probable that a result more favorable to defendant would have occurred absent the error]; *Chapman v. California* (1967) 386 U.S. 18, 24 [reversal for federal constitutional error is not required if the error is harmless beyond a reasonable doubt].)

## DISPOSITION

The judgment is affirmed.

VIRAMONTES, J.

WE CONCUR:

GRIMES, Acting P. J.

WILEY, J.

9